IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**WESTERN DISTRICT.**
BATON ROUGE, AUGUST, 1834.

---

### VIDAL'S HEIRS *vs.* DUPLANTIER.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

The Spanish law required as an indispensable solemnity to the validity of
a testament or will, that it should be signed by the testator and witnesses,
or by some one of the witnesses for him or them at least.

The principle has been settled, that according to the Spanish law it is not
absolutely necessary for the validity of a testament or will, that all the
required solemnities should appear on the face of the testament itself;
but that some apparent defects may be cured or supplied by proof,
when the instrument was offered for probate.

In a petitory action, when the plaintiffs fail to show title in themselves, it
will not be deemed necessary to inquire into the validity of the proceed-
ings in pursuance of which the property was sold to the defendant.

This is a petitory action. The plaintiffs, Caroline and
Maria, f. p. c., the natural daughters of Nicolas Maria Vidal,
late auditor of war, &c. in the province of Louisiana; state

WESTERN DIST. that their ancestor died at Pensacola in 1806, and that in his
*August,* 1834. last will and testament he instituted them, with two other
VIDAL'S HEIRS natural children, who are not now known to exist, his *univer-*
*vs.*
DUPLANTIER. *sal heirs.* That at his death the testator was owner and
proprietor of five tracts of land lying principally in East Baton
Rouge, amounting together to sixteen thousand arpents,
which was granted to one J. B. Labatut by the Spanish gov-
ernment, in the year 1803 or 4; and by him conveyed to
their ancestor. They further state, that Fergus Duplantier,
of the Parish of East Baton Rouge, hath unlawfully taken
possession of the titles to said land, and continues to withhold
them from the petitioners, who are entitled to them in the
absence of other legatees. They allege the value of said
land titles, to be at least sixteen thousand dollars, and that
they have amicably demanded them from the defendant, who
refuses to deliver them : They pray judgment for the delivery
of said titles to them, or their value in damages, as alleged,
and costs.

The plaintiffs propounded two interrogatories to be
answered by the defendant :

*First,* Have you or not, the Spanish grant for sixteen
thousand arpents to J. B. Labatut, as described in the petition ?

*Second,* What is the date of said grant ?

The defendant answered : *First,* "I am in possession of a
Spanish grant of sixteen thousand arpents, in five different
tracts, &c., as described in the petition, which was issued by
Juan Ventura Morales, Spanish Intendant, to J. B. Labatut.
[*I am the legal and bona fide owner of said titles by regular chain
of transfer, having paid the price thereof.*"]

*Second,* "The said grant bears date the 20th January,
1804."

The words in *italics and brackets,* in the first answer, were
objected to by the plaintiffs' counsel as uncalled for, and
stricken out by the court.

The defendant, in his answer to the merits, pleaded a
general denial ; and denied specially that the plaintiffs were
heirs of Vidal, or entitled to any legal right under his will :
He further states he is the legal owner of the tracts of land

claimed by the plaintiffs; having purchased them for the sum of six thousand dollars from one Perrin, through his author- ised agent, by act *sous seing privé*, bearing date the 9th May, 1811. Perrin acquired said property by adjudication to him, on the 27th June, 1808, by Carlos Grandpré, Governor of the district of Baton Rouge, under a decree of the Spanish tribunal at Pensacola, for a debt of four thousand dollars, secured by mortgage, due by the estate of Vidal. He alleges he has been in the actual possession of a considerable portion of the land, ever since his purchase, and instituted suit for the remainder, when the plaintiffs failed to intervene therein, or assert any right thereto. He pleads the prescription of twenty years, and prays that the plaintiffs' demand be rejected, and that he be dismissed with his costs.

The facts of the case show, that Nicolas Maria Vidal was auditor of war under the colonial government of Louisiana, when Gayoso was governor, and resided in New-Orleans. In 1798 he made his will by notarial act, before Pedro Pedesclaux, notary public, and three persons named as witnesses, *but does not sign himself.* In this will the plaintiffs are recognised, with two others, as the natural children of the testator, by a colored woman. Vidal left New-Orleans about the time of the change of government in 1803, and resided in Pensacola, where he died in 1806. The grants of land in controversy, were made by Morales the 20th January, 1804, to J. B. Labatut; and the sale from the latter to Vidal, was dated the 25th February, 1804. In June, 1827, the plaintiffs presented a petition to the probate judge of East Baton Rouge, in which they claim the possession of the estate of Vidal under the will, and pray to be recognised as universal legatees; that an inventory be made of the sixteen thousand arpents of land, and all the other property of Vidal's estate. A decree was rendered, in accordance with the prayer of the petitioners, contradictorily with an attorney appointed to represent the absent heirs. An authentic copy of the will was annexed to this petition, and made a part of the proceedings.

The introduction of the will in ·evidence, was opposed by the defendant, on the ground that it had not been admitted to probate, and was never ordered to be executed ; and that it was null and void, not being made according to law.

The defendant offered in evidence, the *procès verbal* of the sale of the land in controversy, by Grandpré, upon which he relies as the foundation of his title. The decree ordering this sale, is dated the 6th May, 1808, and signed by the civil and military commandant of Pensacola and West Florida. It annuls a previous sale, made under a· former order of the same tribunal, and orders a new one. It is stated in the decree, that the sale is ordered for the purpose of paying a mortgage creditor of the said estate. The decree and proceedings, of the Spanish tribunal at Pensacola, are only recited in the *procès verbal* of the sale made by Grandpré, which is alone in evidence. The plaintiffs' counsel objected to the admissibility of this document : *First,* because it purports on its face, to be the copy of a copy, and is not the best evidence the case admits : *Second,* that it is not legal evidence of a decree recited in it, for the sale of the lands : *Third,* that it does not correspond with the allegations of the answer, which refers to an original decree, for the sale of the land in contest : *Fourth,* it is not a full copy of the proceedings, but only an extract from the mortuary proceedings in the case of Vidal. The court overruled the objections, and admitted this document in evidence, to which decision of the judge, the plaintiffs' counsel excepted.

The adjudication of the land to Perrin, by governor Grandpré, is dated the 27th June, 1808. On the 9th of May, 1811, Perrin by his attorney in fact, sold and conveyed the premises to the present defendant.

The district judge was of opinion, the will was not properly admitted to probate ; and that the defendant acquired a good title, under the decree ánd sale by the Spanish authorities, of the premises in contest. Judgment was rendered in favor of the defendant. The plaintiffs appealed.

*Turner*, for the plaintiffs.

1. The title to the property sued for, is clearly shown to be in the plaintiffs, by the will of Vidal.

2. The defendant has shown no legal title whatever. His deed of sale by the agent of Perrin, cannot avail him.

3. This instrument is an act under private signature, not recorded at a time not suspicious, but after the institution of this suit, which tends to render it suspicious.

4. The power of attorney from Perrin to his agent, did not authorise the sale to the defendant.

5. The defendant, nor those under whom he claims, have ever had a title; the forms of law, have never been complied with. The property belonged to minors. The pretended adjudication has none of the requisites or formalities to divest minors of their title.

6. The document given in evidence by the defendant, should have been rejected, or if received, it was evidence only of the sale, and not of any judgment authorising the sale ; nor of a family meeting with the previous formalities which the law requires, in order to divest minors of their title to property.

7. The price of adjudication has never been paid. The judgment could only, in the worst view for the plaintiffs, have been one of *non suit.*

*R. & A. N. Ogden*, for defendant.

The plaintiffs have failed to establish any rights as heirs of Vidal. The heirship is specially denied; and the will under which they claim, having never been admitted to probate, is null and void. They can derive no right from it.

2. The proceedings instituted in 1827, in the Probate Court, do not furnish evidence of probate of the will. They were irregular, and not done in the manner pointed out by law, and can produce no effect. *Civil Code, p.* 242 *art.* 153. *Ib.* 244, *art,* 162. *La. Code, art.* 1637, 1571. 3 *Martin, N. S.* 473. *Ib.* 458.

3. The plaintiffs cannot claim as the testamentary heirs of Vidal, because being natural children, they should have

alleged and proven, that Vidal left neither descendants nor ascendants.  *Civil Law of Spain, p.* 114.  12 *Martin,* 390.

4. The defendant by his answers to interrogatories propounded to him by plaintiffs, established his right to the title papers sued for.  The part of the answer objected to, was improperly stricken from the record.  11 *Martin,* 217.

5. The defendant has made out a perfect title.  The order of the Spanish tribunal at Pensacola, decreeing the sale of the land, was rendered by a competent authority, and cannot now be inquired into.  It is a domestic and not a foreign judgment, and the proceedings on which it is found, are not required to be shown.  1 *Martin, N. S.* 165.  4 *Martin,* 301. *Ib.* 311.  *Ib.* 157.

6. The copies of the originals, which were deposited in the office of the governor at Baton Rouge, were properly received in evidence.  7 *Peters,* 6.  *Ib.* 714, 16, 17 *and* 24.  *Civil Law of Spain,* 328.

*Pichot,* for the plaintiffs, and in conclusion.

1. The petitioners are testamentary heirs of Vidal, and his succession was acquired to them from the moment of his death.  See *La. Code, art.* 934.

2. Their being sent in possession of the sixteen thousand arpents of land, by judgment of the Court of Probates for East Baton Rouge, is legal, and its validity cannot be collaterally impugned before a District Court.  See *Civil Code, art.* 78. 6 *La. Reports, J. P. Dupré* vs. *Widow C. Reggio et als.*

3. At the time of the death of Vidal, the petitioners were minors, and could be dispossessed of their rights, but by a strict compliance with the formalities required by the Spanish law: a tutor ought to have been appointed to them.  See 6 *Partidas, t.* 16, *l.* 12.

He could not sell their property, except for a valid cause, which was to be mentioned in the deed.  6 *Partidas, t.* 16, *l.* 18. For example, for debts; and in that case, the landed property was to be sold at public auction, in a delay of thirty days from the first notice, and the deed of sale was to be made in

conformity to law 60, *t.* 18, *p.* 3; which was not done in this case.

4. The adjudication made to Sabin Perrin, of whom Fergus Duplantier is the vendee or *ayant-cause,* is radically null and void ; 1st. Because the property sold on a writ of seizure and sale, ought, according to the Spanish law, have been sold after three publications and three public notifications of auction, which, for immoveable property, must take place every nine days, so that there be a delay of thirty days: in this case, but eighteen days elapsed. See *Febrero, part.* 2, *l.* 3, *ch.* 2, §3, *p.* 383, *n.* 136, 168.

2d. Because the other formalities prescribed by law, have not been complied with. See *Febrero, part.* 2, *l.* 3, *ch.* 2, §3, *p.* 404, *n.* 168, 169.

3d. Because the deed of adjudication is not made in conformity to law. See *Febrero, part.* 2, *l.* 3, *ch.* 2, § *final, p.* 540, *n.* 415.

4th. Because the adjudication has not been approved in conformity to law. See *Febrero, part.* 2, *l.* 3, *ch.* 2, § *final, n.* 416, 417.

5th. Because, had even the preceding formalities been complied with, still the adjudication would be null, because the bond and security which were to form the completion of the sale, have never been furnished, and it has, consequently, never been perfect.

The argument drawn from prescription, cannot be legally made use of by the defendant. He never had actual possession ; legal possession, based on a title under private signature, can be opposed to third parties, but from the day of the registry in the office of a notary public. See *Civil Code, art.* 2242.

The deed under which the defendant claims, was recorded only in March, 1834.

*Bullard, J.,* delivered the opinion of the Court.

The plaintiffs allege, that they are the instituted heirs of Nicolas Maria Vidal, and sue to recover the title papers of certain tracts of land, amounting in all to sixteen thousand arpents, which they aver, the defendant unlawfully withholds from them.

The defendant specially denies, that the plaintiffs are the children and heirs of Vidal, under whom they claim, or that they are entitled to any rights as such, by testament or otherwise. He further sets up title to the land, under a judicial sale, made by Grandpré, military and political governor of Baton Rouge, under authority derived from Don Vicente Folch y Juan, governor of West Florida, in the course of the administration of the estate of Vidal.

The plaintiffs, in support of their pretensions, gave in evidence a document, purporting to be the testament of Vidal, dated in 1798 ; and an order or judgment of the Court of Probates, for the parish of East Baton Rouge, that the petitioners be recognised as universal legatees of Vidal, for the sixteen thousand arpents of land, bequeathed by the will, and authorising them to exercise all the rights of ownership to the same. The judgment was rendered on the 27th of July, 1827, in a proceeding to which it is not pretended the present defendant was a party.

As the plaintiffs claim only as natural colored children and instituted heirs, and do not pretend to be the heirs at law, our first inquiry is in relation to the testament, which forms the basis of their pretensions. On a careful examination of the copy in the record, certified by a notary public, it does not appear to have been signed either by the testator or the witness whose names are mentioned in the body of it. The certificate of the notary, before whom the testament purports to have been made, is in the following words : "*Yo, el escribano, doy fé, conozco al señor Ortogante, que está al parecer en su entero juicio, memoria y entendimiento natural, y lo firmé, siendo testigos el señor don Gilberto Leonardo, contador interino de exto. y real hacienda ; don José Maria de la Barba, ministro interventor ; y don José Maria de Peña. Ante mi, Pedro Pedesclaux, not. público.*"

It is not so clear from the copy, whether the words, used be *lo firmé,* I signed it, or *lo firmó,* he signed it ; nor does it appear material, in as much as the signature of the testator does not appear, nor that of either of the witnesses.

The Spanish law required as an indispensable solemnity, that the testament should be signed by the testator and witnesses, or by some one of the witnesses for him or them at least. *Febrero, part.* 1, *chap.* 2, *sec.* 1, *Nos.* 10 *and* 12.

This Court recognised on one occasion, the principle, that according to the Spanish law, it was not absolutely necessary for the validity of a testament, that all the required solemnities should appear on the face of the testament itself. That there may be cases, in which some apparent defects might be cured, and supplied by proof, when the testament should be offered for proof before the proper tribunal, we do not question. But in this case, it does not appear that the testament was ever recognised as such by judicial authority, and ordered to be executed. The proceedings had before the Court of Probates, for the parish of East Baton Rouge, more than twenty years after the death of the testator, does not purport to be a probate of the will, and an order for its execution. No notice is taken of the executors appointed. The supposed will directs the residue of the estate, if *any thing should remain to be inherited,* to be delivered in equal portions to four natural colored children, of whom the plaintiffs are two. It appoints J. B. Labatut and Christoval de Armas, testamentary executors, with full authority to take possession of the whole property, and pay the debts of the testator; and the period of executorship is prolonged beyond the regular period for that purpose.

The plaintiffs having failed to show any title in themselves, it is unnecessary to inquire into the validity of the procedings of the Spanish tribunal, in pursuance of which the land was sold as the property of the deceased Vidal; for it is clear that if the plaintiffs do not take under the will, they are without rights in as much as they are not the heirs at law.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be affirmed with costs.

The Spanish law required as an indispensable solemnity, to the validity of a testament or will, that it should be signed by the testator and witnesses, or by some one of the witnesses for him or them at least.

The principle has been settled, that according to the Spanish law it is not absolutely necessary for the validity of a testament or will that all the required solemnities should appear on the face of the testament itself; but that some apparent defects may be cured, or supplied by proof, when the instrument was offered for Probate.

In a petitory action, when the plaintiffs fail to show title in themselves, it will not be deemed necessary to inquire into the validity of the proceedings in pursuance of which the property was sold to the defendant.