LE BLANC, Judge.
 

 In this case, their honors being evenly divided in opinion as to the proper determina
 
 *260
 
 tion to be made of the issues involved, Judge Samuel A. Le Blanc, of the Court of Appeal, First Circuit, having been called upon by previous order of this court to sit in the case, pronounced the judgment of the court therein, in words and figures, as follows, viz.:
 

 The decedent herein Mary Ann Tallieu, departed this life in the city of New Orleans, on August 28, 1933. Three days thereafter, her sisters, Mrs. Phoebe E. Tallieu, wife of Marcellus H. Crary, and Mrs. Elizabeth Tallieu, widow of William Mestermaker, petitioned the Civil district court for the parish of Orleans for an order to institute search among her effects and particularly in a certain bank box in the Poydras branch of the Whitney National Bank, for a last will and testament, which, they allege, they verily believe had been left by her.
 

 The court granted the order, and Warren O. Coleman, notary public, was authorized and instructed to make the search and to produce the will, if found, in court.
 

 The notary proceeded immediately to make the search as directed, and on September 5, 1933, made his report, in the form of a proees verbal, to the court, in which he declared that he had found what purported to be either a will or a rough draft of a will, written on a tablet, in a box at the residence of the decedent, which tablet he presented intact, with his procés verbal.
 

 On September 18, 1933, the same petitioners who had obtained the order to institute the search for the will 'again appeared in court in a formal petition for the purpose of attacking the document that had been found by the notary and presented by him to the court, on the ground that it was not the last will and testament of the deceased. The material allegation of their petition, on which their whole attack is grounded, is found in article II thereof, which reads as follows:
 

 “Petitioners aver that the said document is not a will and was
 
 not
 
 intended to be the last will and testament of the deceased, Mary Ann Tallieu as will be shown by the fact that she has defaced the same on each page in such way as to show clearly that she did not intend the said document to be the last will and testament; that all of the interested parties should be cited herein in order that their rights, if any, under the said document might be definitely ascertained.”
 

 In the alternative, they allege that should the court be of the opinion that the said purported document is a valid olographic will, that the same be probated and that as the name of the executor therein named had been scratched and canceled, Mrs. William Mestermaker, one of the petitioners, should be naméd dative testamentary executrix upon complying with the requisites of the law. The prayer of the petition is in accordance with the allegations therein made. The only parties in interest, besides the petitioners, are alleged to be Mr. Guy Van Lyman, who had' been designated as executor in the said document, but whose name had been erased, and the Society for Prevention of Cruelty to Animals which had been granted a bequest thereunder.
 

 On November 9, 1933, these same petitioners filed another petition, similar in all respects to the one filed on September 18, 1933, except that several other parties are alleged to have been named as legatees in the docu
 
 *262
 
 ment which is referred to as a purported will, and citation is asked for on all of those so named. The prayer of that petition, like that of the first, is that the said document presented to the court “be declared not a will,” and that Mrs. William Mestermaker be named as administratrix of the succession of the decedent, and in the alternative, should the said document be declared a last will and testament, then that the same be probated, registered, and executed, and that Mrs. Mestermaker be confirmed as dative testamentary executrix upon complying with the requisites of the law.
 

 Several of the parties cited appeared and 'answered these petitions, among them Westminster Presbyterian Church, which also filed an exception of no cause or right of action. The exception was argued and Submitted to the court on the pleadings and the record, and from a judgment sustaining the same and dismissing their demands, Mrs. Mestermaker and Mrs. Crary have taken this appeal.
 

 It is observed at the outset that there is no contention made of fraud, error, mistake, or undue influence, in the drawing and signing of the document that is contested, nor is there any suggestion of mental impairment or physical infirmity or of any legal or other incapacity in the testatrix which might have prevented her from making a will. It is not even intimated that the document is not entirely written, dated, and signed by the hand of the testatrix. The one and only plea, as far as-the petition discloses, on which the attack on the document presented is based, is that the person who prepared and signed it herself defaced it on each page in such manner as to indicate her intention that that document was not to be her last will and testament.
 

 The document is before the court in its original form, and of course it controls all allegations of the petition that have reference to it. We mention this because, from the allegation made, it might be assumed that the document was so badly defaced as to have been mutilated almost beyond recognition; or, to express it in another way, that the erasures on each and every page were so pronounced that it was plainly the decedent’s purpose to thereby show a change in her intention in case any one who afterwards saw the document might be led to believe that it constituted her last will and testament.
 

 The document, as declared in the procés verbal of the notary, is written in lead pencil on the pages of a writing tablet. The tablet is of smooth paper and of the ordinary sm'all size. Including the last page on which the date and the signature appear, the written part consists of nine pages, some of which are separated, and the rest of the tablet is left intact. It may properly be said that the document is in a rather crude form, but outside of the sacramental statutory requirement as to being wholly written, dated, and signed by the handwriting of the testator, we know of no other requirement relating to the form of an olographic will. Indeed, by the very terms of the article of the Code itself, such-will “is subject to no other form.” Civ. Code, art. 1588.
 

 The first page ,of the document begins with the solemn declaration, “i Mary Ann Tallieu do hereby make this my last will and testament,” which is followed by a statement to the effect that the testatrix was never mar
 
 *264
 
 ried and has no forced heirs. The second page contains the date, to wit, “New Orleans, La., June 9th, 1926,” 'a restatement that the testatrix was never married and has no forced heirs and the declaration again that this document is to constitute her last will and testament. There are light pencil marks drawn in a sort of circular and semicircular fashion, not enough to obliterate the writing, however, over the restatement and declaration on this second page; but the date is left absolutely intact. These marks, if taken as an indication of any purpose the testatrix may have had in mind, would seem to show that she realized that she had repeated the statement and declaration already made, and this was unnecessary. It is significant to note, however, that she was careful not to project these pencil marks over the date which she evidently considered a material part of the will.
 

 The six pages following are devoted to the numerous bequests that are • made and the last page contains the date again and the signature of the testatrix which is affixed twice. She signed her name as though to •close the will and then, to make “assurance •doubly sure” as it were, she wrote the date again; this time spelling the word, “ninth” after writing the month “June,” and lastly, so that there could be no question as to her signature, significantly wrote the words: “Signed by me Mary Ann Tallieu.” This last page, it may here be. stated, is without a mark or blemish of any kind.
 

 The marks that are drawn across some portions of the other pages are all light pencil marks, none of which affect the legibility of the words they are drawn over. They 'are very irregular in shape, and whilst some of them would seem to have been purposely made to cancel a particular bequest, or some other provision of the will, that is not so with regard to all of them.
 

 In face of the positive declaration made by the decedent herself that she did, by this very document, “make her last Will and testament,” it would be difficult indeed to conceive how she could have given stronger expression of her intention to make her testamentary disposition. The animus testandi is found in her' own solemn words written in the document by her own hand, and outside proof of this or of a contrary intention would be of little value, if indeed admissible under the pleadings now before the court.
 

 We are given a few examples of cases where an instrument which was intended to serve merely as a rough draft or copy of a will could very easily have been mistaken and used as a will, and are asked under such circumstances, when the document is presented for probate, should not the interested parties be permitted to show that it is not the will of the person who made and signed it, as it never was intended by him to be used as such. Aside from the examples cited being a bit far-fetched and not furnishing a fair and good comparison, our answer would be that certainly, if the parties attacking such instrument made proper allegations showing the circumstances under which it was drawn, it is likely that their petition would be held to disclose a cause of action and be open to proof. But such is not the issue in this case in which, as already stated, the only allegation on which these appellants have based their cause of action is to the effect that by the defacements and erasures made by the
 
 *266
 
 decedent herself on the document presented, she indicated that she did not intend it to be her last will and testament.
 

 The intention of the testatrix to make (his document serve as her last will and testament having been so positively expressed by her, the question which arises then is, Are the marks, or defacements as they are referred to in the petition, sufficient to indicate a change of mind or intention on her part? In other words, are these marks and erasures important enough to strike the document with nullity when considered as a will, or do they evoke an intention to revoke the will, granting that the document was intended to serve as a will?
 

 Treating of erasures and additions in wills, the Civil Code, under article 1589 provides that:
 

 “Erasures not approved by the testator are considered as not made, and words added by the hand of another as not written.”
 

 As amended by Act No. 87 of 1871, the article now further provides that:
 

 “If the erasures are so made as to render it impossible to distinguish the words covered by them, it shall be left to the discretion of the judge to declare, if he considers them important, and in this ease only to decree the -nullity of the testament.”
 

 There is no question here that the erasures or marks found on the document were not approved by the testatrix, and, as we have already stated, they are so lightly drawn that it is very easy to distinguish the words covered by all of them. Under the two different provisions of the article cited therefore, the erasures in this ease can be disregarded altogether. Not having been approved by the testatrix, they are to be considered as not having been made, and since they have not rendered it impossible to read the words which they cover (in which event it would even then be left to the discretion of the judge to pass on their importance, and 'in that case only to decree the nullity of the will), we do not see how they could be given any consideration in construing a change of intention on the part of the testatrix after she had so solemnly expressed her desire to make her will by means of that document. .
 

 Counsel for appellants cited with much confidence the case of Succession of Muh, 35 La. Ann. 394, 48 Am. Rep. 242, but the striking difference between that -case and the present becomes apparent when we read in the opinion of the “painstaking and elaborate defacing and blotting out of the signature. * * * That was the act, it is also stated, which, to the apprehension of the testator, destroyed the document as a will. In commenting on the provisions of the article of the Code in regard to erasures, it was said:
 

 “But it is apparent the Article is not treating of the erasure of a signature to a will. The erasures, which are considered not made if not approved, are those which change or strike out parts or clauses of a paper recognized as an existing will, not. that part, the erasure of which would destroy it as a will. Erasures of clauses in the body of the will affect only the dispositions erased. Erasure of the signature strikes at the existence of the instrument as a will.”
 

 In this last sentence is found the underlying reason on which the decision rests. The marked contrast in the ease now before us-
 
 *268
 
 lies in the fact that the only erasures are of certain clauses in the body of the document which is otherwise valid as an olographic will, in that it is wholly written, dated, and signed by the hand of the testatrix.
 

 Neither, for the same reason, do we think the erasures sufficient to effect a revocation of the will. It might very well be that the erasure of the signature or of the name óf a sole universal legatee under a will could be construed as an intention to revoke on the part of the testator, because without a legatee or a signature there would be no will. But conceding, for the sake of argument, that the erasure of a certain clause in the body of the will would have the effect of revoking that clause, it certainly could not have the far-reaching result of revoking the will as a whole.
 

 But counsel urge further that from these erasures there resulted an act which supposed a change of will, and consequently the revocation took place according to the provisions of article 1691 of the Civil Code. That article treats of the several kinds of revocation of testaments, one of which is called the “tacit” revocation, and with regard to this form, the article reads:
 

 “It is tacit when it results from some other «disposition of the testator, or from some act which supposes a change of will.”
 

 The question that presents itself then, is whether the mere drawing of pencil marks across certain clauses and provisions in the body of a will constitutes such an act as is ■contemplated under the terms of the article.
 

 Article 1692 of the Civil Code, which relates to the form of the act of revoking, provides that
 

 “The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.”
 

 This article, it was held, in Succession of Hill, 47 La. Ann. 329, 16 So. 819, 821, refers to all revocations mentioned in article 1691 of the Code, except the tacit revocation. With regard to the form of act necessary to effect the tacit revocation, it is stated that the words “other disposition,” used in the article, mean “when the testator has made another testament, and the disposition therein is such as to tacitly destroy the effect of a prior disposition; and the language, ‘from some other act which supposes a change of will,’ is to be interpreted and explained by the following article -of the Code (1695), which says: ‘A donation inter vivos, or a sale made by the testator of the whole or a part of the thing bequeathed as a legacy amounts to a revocation of the testamentary disposition for all that has been sold or given even though the sale or donation be null and the thing have returned into the possession of the testator, whether by the effect of that nullity or by another means.’ ” Certainly the mere drawing of pencil marks across certain provisions in the body of a will cannot be classed as an act coming within the terms of that article of the Code. We believe that the following language quoted from the opinion in the Succession of Hill Case, is also pertinent to the question here under discussion:
 

 
 *270
 
 “Under article 1691, as explained by subsequent articles, there are only two modes of revoking a valid testament, — the one by a written instrument clothed with the formalities of a last will and testament; and the other by a donation inter vivos, or atsale of the thing, in part or in whole, bequeathed. The acts and declarations of the testator do not come within the tacit revocation expressed in the Code. * * *
 

 “The fact that there was no erasure of her signature or that of the legatee, and the will was in existence at the time of her death, is, we think, evidence that she did not intend to alter her mind in relation to her disposition in the testáment. * * *
 

 “Until the change of mind or intention is expressed in the mode pointed out by law, the original intention is presumed to exist.”
 

 In the present case, a period of more than seven years elapsed between the date on which the testatrix executed her will and the date of her death. The will was found in a box at her residence where it was no doubt readily and easily accessible. Certainly she had ample time and opportunity, if she had undergone a change of mind with regard to her will, and wanted to revoke it, to execute that change by some act more expressive than the mere drawing of a few pencil marks across certain clauses therein. This, we hold, does not constitute such an act as “supposes a change of will” under article 1691 of the Code.
 

 As authority on this point also, counsel for appellants refer to the opinion in the case of Succession of Muh, supra, wherein certain language might be interpreted to mean that erasures in his will, by the testator, might be construed into an act of revocation. It is significant to note, however, that in Succession of Hill, supra, that decision was also cited as authority, and, in commenting on it, it was said:
 

 “In that casé, we think, in the opinion, there was, in the language of the court, some confusion in treating the destruction of the will with its revocation, and construing article 1691 of the Code as referring to acts which amount to a destruction of the testament.”
 

 It is then made plain that the Code nowhere provides for the revocation of a will by destruction, no doubt for the simple reason that after the destruction of the will by mutilation the situation is the same as though there had never been any will at all, and there exists no necessity for its express or tacit revocation. On this point, the case Succession of Hill is controlling, and we hold that there was no revocation of the will.
 

 As limited by the issue presented on the petition of these appellants to have the document presented declared not a will, we are of the opinion that the judgment of the lower court correctly sustained the exception of no cause or right of action, and properly dismissed their demand, and it is accordingly affirmed.
 

 O’NIELL, C. J., and OVERTON and ODOM, JJ., dissent.
 

 O’NIELL, C. J., hands down reasons.