ODOM, Justice.
 

 Mrs. Leontine A. Dambly died at her home in Baton Rouge on November 2, 1936, leaving property both real and personal. On the following day her sister, Mrs. Nora Madden, petitioned the court to appoint a notary public for the purpose of making a search for a last will and testament. A notary was appointed, search was made, but no will was found.
 

 On November 5, Mrs. Madden made formal application to the court to be appointed administratrix of the succession, alleging that the deceased died intestate owing debts both privileged and ordinary, and prayed for an inventory.
 

 On November 13, Dr. John R. Fridge filed a petition alleging that Mrs. Dambly had died on November 2, 1936, leaving a last will and testament in olographic form, dated August 27, 1927, in which he was named executor with season and without bond; that he accepted the trust and prayed that the will be probated and that he be confirmed as executor. He opposed the application of Mrs. Nora Madden to be appointed administratrix.
 

 On November 17, four days after Dr. Fridge made application to probate the will dated August 27, 1927, Mrs. Madden filed opposition to his application, alleging that the will which he presented had been revoked by a subsequent will made by deceased on April S, 1928. She alleged, however:
 

 “That the top part of said will containing the name of the said Mrs. Leontine A. Dambly and the bottom part thereof containing her signature have been torn from said will and destroyed.
 

 “That opponent is informed and believes and therefore alleges that sometime in the year 1936, on a day the date of which opponent does not know, the said Mrs. Leontine A. Dambly tore from said will
 
 *503
 
 dated the 5th day of April, 1928 and destroyed the said top part thereof and the said bottom part thereof.
 

 “That opponent files herewith and makes a part hereof the said will dated the 5th day of April, 1928 less the said top part thereof and the said bottom part thereof.”
 

 Paragraph 36 of her petition reads as follows:
 

 “That by tearing off and destroying the said top part of said will dated the 5th day of April, 1928 and the said bottom part thereof, the said Mrs. Leontine A. Dambly tacitly revoked the said will dated the 5th day of April, 1928.”
 

 And in Paragraph 37 it is alleged that “opponent is informed and believes, and therefore alleges that the said Mrs. Leon-tine A. Dambly left at her death no will made by her after -she made said will dated the 5.th day of April, 1928”, and that (Paragraph 38) “therefore, the said - Mrs. Leontine A. Dambly died intestate”, and that she was entitled to be appointed administratrix of said succession.
 

 Fred S. LeBlanc, an attorney appointed by the court to represent absent heirs, also opposed the application of Dr. Fridge to have the first will probated, on the same grounds set up by Mrs. Nora Madden. He alleged, as did Mrs. Madden, that “by tearing off and destroying the said top part of said will dated the 5th day- of April, 1928 and the said bottom part thereof, the said Mrs. Leontine A. Dambly tacitly revoked the said will dated ■ the. 5th day of April, 1928”:
 

 On January 25, 1937, after an inventory and appraisement of the property left by the deceased had been made and filed in court but before any further steps had been taken, Mrs. Pearl Riley Hogan, the wife of John P. Hogan, presented a petition to the court, in which she alleged that she was' the daughter and sole heir of her deceased mother, Mrs. Leontine A. Dambly. After making special mention of the will which Dr. Fridge had filed for probate and of the second will which revoked the first one, she alleged, as did Mrs. Madden and Mr. LeBlanc, “that by. tearing off and destroying the said top part of said will dated the 5th day of April, 1928 and the said bottom part thereof, the said Mrs. Leontine A. Dambly tacitly revoked the said will dated the 5th’ day of April, 1928”. Mrs. Hogan further alleged that Mrs. Dambly had died intestate and prayed that she be appointed administratrix of the succession.
 

 Mrs. Hogan further alleged that on or about the 14th day of January 1937, she found the top part and the bottom part of the second will, which had been torn off by the deceased. The detached parts of the second will were attached to, and filed with, the petition. She alleged in the alternative that, in case the court should find that the deceased did not tear off the top and the bottom portions of the second will “with the intention of revoking it, petitioner is informed and believes that the said will dated the 5th day of April, 1928 is the last will and testament of the said Mrs. Leontine A. Dambly and should be probated as such”.
 

 
 *505
 
 After praying that certain interested parties be ,cited, Mrs. Hogan, daughter of the deceased, further especially prayed that the first will “be denied and refused probate as the last will” of the deceased, and that “it be adjudged and decreed that if said document dated the 27th day of August, 1927 was ever the last will of the said Mrs. Leontine A. Dambly it has been revoked and has no effect whatsoever”, and
 

 “Petitioner further prays that it be ad judged and decreed that the said will dated the 5th. day of April, 1928 has been revoked and neither any of the legacies contained therein nor the appointment of the said Albert Ligón as executor thereof has any effect whatsoever.”
 

 She prayed in the alternative that, in case the court should hold that deceased did not mutilate the second will “with the intention of revoking it”, then and in that event, the first will be denied and refused probate on the ground that it was revoked by the second will, and that it be adjudged that the second will is the last will of the deceased.
 

 When Mrs. Hogan, the daughter, came into court, the petition of Mrs. Madden, the sister of the deceased, to be appointed administratrix, and her opposition to the probate of the first will were dismissed.
 

 Answers to Mrs. Hogan’s petition were filed by Dr. Fridge, executor under the first will; by Mr. Ligón, executor under the second will, and by Dr. McMahon, whose minor son was a legatee under the first will.
 

 After trial of the case on its merits, there was judgment decreeing:
 

 (1) “that the will of Mrs. Leontine A. Dambly dated the 27th day of August, 1927 and offered for probate herein by Dr. John R. Fridge was revoked by the holographic will of the said Mrs. Leontine A. Dambly dated the 5th day of April, 1928, the fragments of which have been filed herein”;
 

 (2) “that, therefore, the said will dated August 27th, 1927 is hereby denied and refused probate”;
 

 (3) “that the said holographic will of the said Mrs. Leontine A. Dambly dated the 5th day of April, 1928 was revoked by the said Mrs. Leontine A. Dambly by the mutilation thereof”;
 

 (4) “that the said will dated the 5th day of April, 1928 is hereby refused and denied probate”;' and
 

 (5) “that the said Mrs. Leontine A. Dambly died intestate”.
 

 Dr. Fridge and Russell McMahon, Dr. McMahon’s son, who had become of age and who had been made a party to the proceeding, appealed.
 

 The pleadings in this case are numerous and lengthy. But, as revealed by them, it is clear that, in the last analysis, the only pertinent question involved in this litigation is whether the first will made by Mrs. Dambly- on August 27, 1927, was revoked by the second will made on April 5, 1928. If it was, then Mrs. Dambly died intestate and her only child, Mrs. .Pearl Riley Hogan, is her sole heir and should be appointed administratrix.
 

 
 *507
 
 The first will is olographic in form. It is testamentary in terms, and it is admitted by all parties that it was entirely written, dated and signed by the testatrix. After directing that all her just debts be paid, she made two special bequests. She bequeathed $100" to an old servant, George Jackson, and to Russell McMahon, son of Dr. Rhett G. McMahon, certain lots in Baton Rouge, La., and the improvements thereon, or, in lieu thereof, at his option, the sum of $20,000. The balance of her estate was bequeathed to her only living child, Pearl (Mrs. Pearl Riley Hogan). The will provided that, in case the testatrix should survive her daughter, “I give to Our Lady of the Lake Sanitarium the sum of - Dollars and the remaining portion of my estate to Russell McMahon”. She named Dr. John R. Fridge executor and revoked all prior wills.
 

 Dr. Fridge had been her physician, and the two were intimate friends. After writing the will, she put it in an envelope which she sealed, handed the sealed envelope to Dr. Fridge, told him that it contained her last will, and asked him to keep it. He put it in his safe and did not open the envelope until after Mrs. Dambly’s death.
 

 The second will was dated April 5, 1928. Like the first one, it was olographic in form, testamentary in terms, and it is admitted that it was entirely written, dated and signed by Mrs. Dambly. By it she bequeathed to William Dambly, her former husband, $2,000; to Our Lady of the Lake Sanitarium, $500; to Louis Godlove, $200; to Albert Ligón, $2,000; and “the residue of my estate I leave to my only child Pearl Moore (Mrs. Hogan) and may she live long to enjoy it”. She named Albert Ligón executor without bond.
 

 The opening statement of this will reads as follows:
 

 “I Leontine A. Dambly born Grigsby being of sound mind and aware of the uncertainty of life do make this last will, revoking all others.”
 

 Shortly after writing this will, Mrs. Dambly handed it to Albert Ligón, who was named executor, and asked him to keep it. He kept it until the early part of 1935, about seven years, when, at her request, he handed it back to her. She stated to him at the time that she wanted to put it in her bank box. Mr. Ligón did not see the will again during Mrs. Dambly’s lifetime.
 

 At the trial he was handed three pieces of paper, or fragments, and was asked whether he recognized them. He put them together, said they fitted perfectly, and that the three constituted the whole of the will as he had seen it. On one of the small fragments were written these words - “Parish of East Baton Rouge State of Louisiana. I Leontine A. Dambly born Grigsby”. On the other small fragment nothing was written except the name “Leontine A. Dambly”.
 

 The other piece, or fragment, may be termed the body of the will. The top three lines of it are in these words: “being of sound mind and aware of the uncertainty of life do make this my last will, revoking all others”. Then follow the testamentary dispositions of property and the naming of Albert Ligón as executor. The bottom
 
 *509
 
 three lines of this fragment are in these words: “this will written dated and signed in my own handwriting this fifth day of April nineteen hundred and twenty-eight”.
 

 It is certain that these fragments constitute the whole of what was originally one instrument, written as a last will by Mrs. Dambly.
 

 The largest fragment, the one we have designated as the body of the will, was found by the notary who searched the premises. He testified that he found it in an unsealed envelope in a bureau drawer. He did not find the other two fragments. These were found two months later by the daughter, Mrs. Hogan, in her mother’s work basket. The work basket, Mrs. Hogan said, was found “Hanging up in a little closet, along with a whole lot of spools and buttons and rags * * *. They were all tied up with rags, like anybody would just make a memorandum and tie them up”. These small fragments were therefore not found with or near the large fragment. On the reverse side of one of the small fragments were two columns of figures made by Mrs. Dambly with a lead pencil. The figures were added and the totals set down. This gives rise to the suggestion that Mrs. Dambly had used it as a “scrap of paper” on which to make memoranda.
 

 It is conceded by all parties that this second will was thus mutilated by Mrs. Dambly, the testatrix, with her own hands, and that after it was mutilated she put the large fragment in an envelope, and that the unsealed envelope was by her deposited in a bureau drawer; and further conceded that she put the other two fragments in her work basket along with a lot of old rags and other cast off articles and hung the basket up in a closet. In fact, it was specifically alleged by Mrs. Hogan and others who opposed the probate of the first will that the second will was torn up, or mutilated, by the testatrix herself.
 

 It was alleged by Mrs. Hogan and others, and it is now argued by their counsel, that by mutilating the second will in the manner above stated the testatrix intended to, and did as a matter of law, tacitly revoke it, and they cite the Succession of Müh, 35 La.Ann. 394, 48 Am.Rep. 242, in support of their argument. The trial judge held that the second will was revoked by mutilation.
 

 The trial judge held also that the second will, having been thus mutilated by the testatrix, could not be admitted to probate. The ruling on this point was based upon the decision of this court in the Succession of Hill, 47 La.Ann. 329, 16 So. 819, where it was said [page 821]: “If the testator burns or tears up the will, there is no will in existence; no testament that can be probated.”
 

 This was the theory originally advanced by counsel for Mrs. Hogan and others. They alleged that Mrs. Dambly had torn the second will up and that at the date of her death it could have no effect. In fact, they prayed that “it be adjudged and decreed that the said will dated the 5th. day of April, 1928 has been revoked and neither any of the legacies therein contained nor the appointment of the said Albert
 
 *511
 
 Ligón as executor thereof has any effect whatsoever”.
 

 Counsel’s argument was from the beginning, and now is, that Mrs. Dambly died intestate, and it was so held hy the trial judge. This argument and ruling are based upon the theory that the second will by express terms revoked the first one, and that the revocation took effect the moment the second will was written and signed by Mrs. Dambly; that, thereafter the first will had no vitality, was a dead thing, a mere scrap of paper; .and that, when Mrs. Dambly mutilated, tore up, the second will,, it likewise had,no vitality, could not be probated, and could not be made effective as a last will — hence that Mrs. Dambly died intestate.
 

 The theory of counsel and the ruling of the trial judge that the second will, because of its mutilation by the testatrix, could not be probated and could have no effect as a last will, are unquestionably correct. The paper on which the will was written was severed into three pieces. The two top lines and the signature at the bottom were completely torn off. The main body of the will, the testamentary portion of it, was left intact. But, when found in an unsealed envelope, it had no date and no signature attached. It therefore was not a valid will. The severed parts containing the two top lines and the signature were not kept by the testatrix with the other part. They were found where she put them — in another part of the house among a lot of rubbish. This clearly indicates an intent on the part of the testatrix to render the will void and ineffective; so that, when Mrs. Dambly died, the second will was no will at all.
 

 In Succession of Hill, supra, the court said:
 

 “If the testator burns or tears up the will, there is no will in existence; no testament that can be probated. And the same may he said by obliteration, defacement, the erasure of names of legatees, and the erasure of the testator’s signature. In either case there is no will in existence, and no' question of revocation can be presented. But no more complete revocation could be made than by the destruction of the testament. Article 1691 of the Code does not mention it as a mode of revocation.”
 

 Mrs. Dambly’s second will expressly revoked all others. But the second will had no legal existence at the time of her death. Conceding this to be true, counsel for Mrs. Hogan and others, the appellees, argue that the first will was nevertheless revoked by the second one, and that the revocation of the second will did not revive the first one.
 

 Speaking of the second will, the one dated April 5, 1928, counsel for the appellees say in their brief at Page 32:
 

 “That will was an olographic will in due form as we have proved. It was. in full force on April 5th, 1928 when it was made and remained in full force thereafter until it was mutilated sometime subsequent to the time Mr. Kizer saw it intact shortly before Mrs. Dambly’s death..
 

 “The will of August 27th, T927 whs certainly revoked on April 5th, 1928, by the will of that date and certainly remained revoked as long, as the will of April 5th, 1928 remained intact.”
 

 
 *513
 
 Reference to certain articles of the Revised Civil Code of 1870 reveals the error into which counsel have fallen. Article 1692 of the Rev.Civ.Code says that:
 

 “The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.”
 

 This is not the only kind of revocation recognized by the Rev.Civ.Code, for Article 1691, as amended by Act No. 114 of 1928, provides that the revocation of testaments “by the act of the testator is express or tacit”, and “It is express when the testator has formally declared in writing that he revokes his testament”, and “It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will”.
 

 The contention in this case is that the revocation of the first will was “express,” by an “act” of the testatrix in which she formally declared in writing that she revoked it. The revocatory act referred to is the second will. The form of that revocatory act met the requirements of Article 1692 of the Code. It was “made in one of the forms prescribed for testaments, and clothed with the same formalities”. In fact, it was an instrument intended to be, and was, a testament mortis causa, in which was written a clause expressly revoking all prior wills.
 

 But that testament never went into effect. Mrs. Dambly destroyed it. Dispositions mortis cause (in prospect of death) do not take effect during the life of the testator, Article 1469 of the Revised Civil Code provides that:
 

 “A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable.”
 

 Article 1644 provides that a testament can have no effect until probated. That article reads as follows:
 

 “No testament can have effect, unless it has been presented to the judge of the parish in which the succession'is opened; the judge shall order the execution of the testament after, its being opened and proved, in the cases prescribed by law.”
 

 Article 1645 provides that “The execution of a testament shall not be ordered until the decease of the testator has been sufficiently proved to the judge to whom the testament is presented”.
 

 Article 1646 prescribes the method of procedure for proof and probate of wills. It provides that:
 

 “When the decease of the testator has been sufficiently proved to the judge to whom the testament is presented, he shall immediately proceed to open it, if it be sealed, and to the proof of it in presence of the notary and the witnesses who were present at the making of it, and who are on the spot, or duly called.” .
 

 These articles make it clear: (1) That a testament mortis causa — such was the second will of Mrs. Dambly by which it is argued that the first will was revoked — is an act which takes effect “when the donor shall no longer exist”; (2) that such an act has no effect until it is probated, and (3) that it cannot be probated “until the
 
 *515
 
 decease of the testator has been sufficiently proved to the judge to whom the testament is presented”.
 

 It has been repeatedly held by this court that a will has no effect until probated and ordered to be executed by a competent court. See: Vidal’s Heirs v. Duplantier, 7 La. 37, 45; Stewart’s Curator v. Row, 10 La. 530; Marcos v. Barcas, 5 La.Ann. 265; Heirs of Landry v. Heirs of Duaron, 5 La.Ann. 612; Aubert v. Aubert, 6 La.Ann. 104; Lucas v. Brooks, 23 La.Ann. 117, 126; Sprowl v. Lockett, 109 La. 894, 33 So. 911; Succession of McDermott, 136 La. 80, 66 So. 546.
 

 The reason why a disposition mortis causa has no effect until the death of the testator is that it is revocable. The first paragraph of Article 1690 of the Revised Civil Code provides that “Testaments are revocable at the will of the testator until his decease”, and the second paragraph of that article provides that:
 

 “The testator can not renounce this right of revocation nor obligate himself to exercise it only under certain words and restrictions, and if he does so, such declaration shall be considered as not written.”
 

 In Succession of Gilmore, 157 La. 130, 102 So. 94, this court said [page 95]:
 

 “As testaments cannot take effect until the death of the testator, it is elementary that the testatpr is at liberty to revoke all former testaments at will. This right of revocation cannot be renounced or restricted by the testator. R.C.C. art. 1690.”
 

 See, also, Succession of Nelson, 163 La. 458, 112 So. 298.
 

 A written instrument intended to be a last will is a statement of the purpose, the desire or wish, of a person as it exists at the time of making the instrument. If his purpose or wish changes, and as often as it changes, he may change the expression of his wish or purpose. The rule here and elsewhere is that a will is ambulatory until the death of the maker. It is only at his death that it ceases to be ambulatory or that it acquires a fixed status.
 

 The second will made by Mrs. Dambly did not, and could not, go into effect, for the reason that she destroyed it by mutilation. It follows that her first will, dated August 27, 1927, was never revoked and must stand as her last will.
 

 Counsel for appellees have devoted a considerable portion of their brief to a discussion of the question whether a will which is revoked by a subsequent will is revived when the second, or revoking, will is itself revoked. Their theory is that the first will is not revived, and they cite, in support of their argument, French authorities and English cases which follow the Ecclesiastical .Law of England. They say that the French authorities are divided on the question. Naturally, counsel approve those which support their theory. But these authorities cannot be considered as even persuasive in determining the question here involved. The reason is that in this state the method of revoking wills and the question as to when a will takes effect are purely statutory. It seems that under the French law a testator may revoke a former will by making a notarial declaration declaring that it is his intention to revoke it.
 
 *517
 
 But that is not the law in this state. Rev. Civ.Code, art. 1692.
 

 Much is said by counsel regarding the “revival” of a will in case the revoking will is itself revoked. They not only concede, but argue, that in the case at bar the revoking will was revoked.
 

 The question in this case is not whether the first will was revived when the revoking will was revoked, but whether the first will was ever revoked. Our opinion is, and we hold, that the first will was never revoked.
 

 In the recent case of Succession of Feitel, 187 La. 596, 175 So. 72, on rehearing, this court discussed at length four wills made by the testator on different dates, and in the course of our opinion we said, at page 618, 175 So. at page 80:
 

 “During the trial of the case the attorney representing the plaintiff put great stress upon the fact that each one of the four wills was prefaced with a clause revoking all previous wills, thus: ‘This is my last will and testament and I hereby revoke all previous wills made by me.’ The law on the subject, however, is that, if a will containing a clause revoking a previous will, or revoking all previous wills of the testator, is annulled, the revoking clause loses its effect, and the last preceding will stands unrevoked. Rev.Civ.Code, art. 1692; Hollingshead v. Sturgis, 21 La.Ann. 450; Succession of Hill, 47 La.Ann. 329, 16 So. 819. The reason for this is that the Civil Code requires, in article 1692, that an express revocation of a testament or testamentary disposition, to have effect, ‘must be made in one of the forms prescribed for testaments, and (be)' clothed with the same formalities.’ ”
 

 For the reasons assigned, the judgment appealed from, decreeing that the will of Mrs. Leontine A. Dambly dated the 27th day of August, 1927, and offered for probate by Dr. John R. Fridge was revoked by the olographic will of the said Mrs. Dambly dated April 5, 1928, and that the said Mrs. Dambly died intestate, and ordering that Mrs. Pearl Riley Hogan be appointed administratrix of the succession' of the said Mrs. Dambly and ordering that letters, as such, issue to her on her complying with the requisites of the law, and denying the application of Dr. John R. Fridge to have the will dated August 27, 1927, admitted to probate, and sustaining the several oppositions to the probate of the said will, is reversed and set aside; and it is now ordered that the olographic will of Mrs. Dambly dated August 27, 1927, be admitted to probate according to law, and further ordered that all oppositions thereto be dismissed at the cost of opponents.