60 So.2d 865
SMITH et al. v. SHAW et al.

No. 40538.

July 3, 1952.

Rehearing Denied Oct. 9, 1952.

Cook, Clark & Egan, Shreveport, for defendants-appellants.

C. B. Prothro, Shreveport, G. C. Vidrine, Oakdale, for plaintiffs-appellees.

FOURNET, Chief Justice.

The defendants are appealing from the judgment of the District Court decreeing the plaintiffs to be the owners of four certain parcels of real property in Caddo Parish, Louisiana, and rejecting the demands in reconvention filed by the defendants in which the latter sought to be recognized as owners of an undivided interest therein.

The proceeding arose as a slander of title suit, the plaintiffs, Mrs. Catherine S. Smith and Mrs. Sue Belle J. Boutchee, alleging actual possession of the property and ownership thereof by virtue of a judgment of court in the Succession of Mrs. Myra D. Jones, Deceased, wherein they were recognized as the sole and only heirs at law of Mrs. Jones (their aunt) and put into possession of her estate, consisting solely of the four pieces of real property, in the proportion of one-half to each. The defendants, Mrs. Ethel Galvin and Mrs. Allen Shaw (legal heirs of Mrs. Jones' deceased husband), in answer, admitted that they claim an interest in the property, and assuming the position of plaintiffs in reconvention, alleged that they became owners of a one-fourth interest each as testamentary legatees under a valid olographic will executed by the deceased in January, 1947, which they assert should be given legal effect and secondary proof thereof allowed in view of the fact that said will was destroyed on October 10, 1948, when the testatrix executed a nuncupative will by public act, the latter will in turn having been destroyed some ten days later (October 20, 1948) upon execution of another nuncupative will by public act, and this last will having been declared null and void upon being presented for probate in the Succession proceedings. The defendants, plaintiffs in reconvention, claim that the three wills contained the same testamentary disposition, namely, that the property was to be sold and the proceeds divided equally between the plaintiffs in suit and the plaintiffs in reconvention.

In reasons for judgment the District Court pointed out that an unprobated will is not a muniment of title, and since in a petitory action the claimant must rely on the strength of his own title, the defendants could not prevail, not having shown that they have any title to the property in question. The District Judge further observed that even under the purported pro-

visions of the will on which the defendants base their claim, there was no bequest of title to real property but merely a provision for equal division of the proceeds after sale. On rehearing below, to give consideration to the prayer of the defendants that the olographic will of decedent be admitted to probate (the execution of the will and the provisions thereof as set out in the reconventional demand having been admitted by the plaintiffs), the District Judge concluded that the said will was revoked by destruction upon orders of the testatrix, and furthermore, as indicative of her intention to revoke, a statement to the effect that all previous wills were revoked was incorporated in the second nuncupative will (declared a nullity).

There is no dispute as to the execution of the olographic will, its formal validity, and its actual destruction through mutilation, the document having been torn in pieces and discarded by decedent's attorney, Mr. Lincove, at her suggestion and in her presence, after he had completed the first nuncupative will by public act. The defendants (appellants) contend, however, that the olographic will was destroyed through error of both fact and law, induced by belief in Mr. Lincove's representation that the document prepared by him was a valid instrument; but, because it was defective, a second nuncupative will by public act was drawn (by another attorney, Mr. Woodley) to replace it, and

since the latter was subsequently declared null for want of proper form, the olographic will was not revoked and should be admitted to probate. Relying on a so-called "Doctrine of Dependent Relative Revocation," said to be supported by decisions from numerous states and widely recognized in England and Canada, the defendants argue that the revocation of the olographic will was conditioned on the validity of the new testament; and with the intention of the testatrix so clearly manifested in three wills executed within a short time of her death, each containing the same provision relative to disposition of the residue of her estate, it would be wholly unreasonable to assume that she wished to die intestate rather than to have her property distributed according to the provisions of her olographic will.

Under our system of law there is no such doctrine as "Dependent Relative Revocation," Article 1691 of the LSA–Civil Code providing that "The revocation of testaments by the act of the testator is express or tacit"—express when the testator has formally declared in writing that he revokes the testament, tacit "when it results * * * from some act which supposes a change of will"; and while the Code does not specify that the destruction of a testament constitutes a revocation thereof, the fact of intentional destruction by the testator as constituting the most effective method of invalidation

has been recognized by this Court on many occasions. See Succession of Muh, 35 La. Ann. 394; Succession of Blakemore, 43 La.Ann. 845, 9 So. 496; Succession of Hill, 47 La.Ann. 329, 16 So. 819; Succession of Batchelor, 48 La.Ann. 278, 19 So. 283; Succession of Tallieu, 180 La. 257, 156 So. 345; Succession of Dambly, 191 La. 500, 186 So. 7.

In the landmark case on the subject matter, Succession of Hill, supra, this Court, after noting the two modes of revoking a testament provided in Article 1691, and the fact that the Code nowhere speaks of the destruction of a testament as a means of revocation, reasoned: "* * * if the testament was destroyed, there was an end of all testamentary disposition, so far as that testament was concerned, and the testator was in a situation as though he had never disposed by last will, and there was no necessity for an express or a tacit revocation. If the testator burns or tears up the will, there is no will in existence; no testament that can be probated." 47 La. Ann. at page 334, 16 So. at page 821.

We think, therefore, paraphrasing the language used in the Succession of Dambly, supra, that the first will made by Mrs. Myra D. Jones did not, and could not, go into effect for the reason that she caused it to be destroyed by mutilation.

For the reasons assigned, the judgment of the district court is affirmed.