770 So.2d 804 (2000)
SUCCESSION OF Bessie Cantrell JACKSON.
No. CA 00-31.
Court of Appeal of Louisiana, Third Circuit.
July 26, 2000.
Writ Denied November 17, 2000.
*805 James Bolen & Gregory Erwin, Bolen & Erwin, Alexandria, LA, Attorney for Plaintiff/ Appellant-The Louisiana Baptist Foundation.
Ricky Sooter, Provosty, Sadler & Delaunay, Alexandria, LA, Attorneys for Defendants/ Appellees-Stanley and Hilda Dickson.
(Court composed of HENRY L. YELVERTON, ULYSSES G. THIBODEAUX, BILLIE COLOMBARO WOODARD, JIMMIE C. PETERS, and MARC T. AMY, Judges).
YELVERTON, Judge.
The Louisiana Baptist Foundation claims title to certain residential property[1] in Rapides Parish as a particular legatee in the last will and testament of Ms. Bessie Cantrell Jackson, who died April 12, 1996. The defendants are Stanley J. and Hilda *806 L. Dickson, individually, and Hilda L. Dickson in her capacity as the executrix under the will. The principal issue before us is whether the particular legacy was revoked by the testatrix. The trial judge held that it was. We reverse. We hold that it was not revoked and that the property passed by succession to the Foundation.
There is no dispute about the essential facts of this case. Bessie Jackson's husband died in 1985. Childless and in failing health herself, Ms. Jackson began to depend more and more on Stanley and Hilda Dickson, her neighbors and close friends. In 1989, they went to an attorney and Ms. Jackson executed a will. She designated Hilda Dickson as the executrix. A devout Baptist, Ms. Jackson named the Louisiana Baptist Foundation a particular legatee, bequeathing it her residence in Rapides Parish in trust. This was the only immovable property she owned. There were a few particular legacies of movable property to other persons. The Dicksons were named the universal legatees.
Ms. Jackson was quite obese and very hard-of-hearing, and she had arthritis and other ailments. Because of her dependence on the Dicksons, at the same time she made her will she also executed a general "Power of Attorney" to Hilda Dickson. Although the instrument included authority to sell real property in Rapides Parish and to receive the price thereof, it did not specify a price or any other terms or conditions of such a sale. The instrument did not empower Ms. Dickson to donate any of Ms. Jackson's property. Ms. Dickson established a joint checking account for "Bessie C. Jackson or Hilda Dickson" with the American Security Bank of Alexandria, Louisiana. This account was for the deposit of Ms. Jackson's income and the payment of her bills.
Ms. Jackson's health continued to get worse and on February 11, 1995, at the age of 77, she was placed in Annie Mae Matthews Memorial Nursing Home in Alexandria with a diagnosis of altered mental status and later, Alzheimer's Disease. Ms. Dickson was permitted to testify, over objection of counsel for the Foundation, about a conversation she had with the deceased two or three weeks after she entered the nursing home. The two were alone in Ms. Jackson's room. Ms. Jackson asked Ms. Dickson if she was ever going to be able to go home. Told that she could not, because the doctors did not think she could take care of herself, Ms. Jackson responded by telling Ms. Dickson that she wanted to sell her home and that she could buy it.
This conversation is the operative fact which the Dicksons contend is the manifestation of Ms. Jackson's intent to revoke the particular legacy to the Foundation. They also contend that this verbal authorization enabled Ms. Dickson to sell the property to herself.
Three or four weeks later, on March 24, 1995, Ms. Dickson, as "agent and attorney-in-fact" of the deceased, initiated what the trial judge described as a "convoluted series of transactions" involving the property. These transactions ended up with the Dicksons becoming the record owners.
The first transaction in the series was an act of sale to Dennis R. Dickson and his wife, Patricia, for $100,000. Dennis is Stanley and Hilda Dickson's son. For the price, the younger Dicksons signed a promissory note for $100,000 payable to Ms. Jackson, and secured it with an act of mortgage. The sale and mortgage were recorded in the Rapides Parish records. The note was never paid. The younger Dicksons testified that they knew they were not buying the property, and that they would not have to pay the promissory note; they were aware that the property would soon be put in his parents' name. They testified that they participated in the deed because that was what they were told to do.
About three months later, on June 16, 1995, the second transaction occurred. The younger Dicksons conveyed the property *807 to the elder Dicksons by an instrument of cash sale reciting a consideration of $100,000. The elder Dicksons moved into the Jackson residence. The elder Dicksons had earlier put up their own home for sale. The sale of their own home closed on August 18, 1995, and they were paid $110,000. The promissory note given by the younger Dicksons for $100,000 for the Jackson property was marked paid by Ms. Dickson, and it was used to cancel the inscription of the mortgage on the public records.
On the same day that Stanley and Hilda Dickson got the $110,000 from the sale of their own home, they deposited $100,000 in the Bessie C. Jackson or Hilda Dickson joint account. Ms. Dickson immediately wrote three checks on that account for $68,000, $25,000, and $7,000. She used these three checks to purchase certificates of deposit with three different banks in the names of only her husband and herself. Stanley Dickson at the trial explained why this was done. He said that the $100,000 was Ms. Jackson's money, but that she wanted the CDs to be put in his name so that if something happened to Ms. Dickson and Ms. Jackson needed the money quickly, he would have ready access to it. At the trial, he testified that he and his wife still had those CDs.
Ms. Jackson died on April 12, 1996. When Ms. Dickson, as executrix of the will, opened Ms. Jackson's succession, probated her will, and petitioned the court for possession, these three CDs were not included in the detailed descriptive list of assets, and they were not included in the judgment of possession.
Ms. Dickson's petition for possession, as executrix, pled the following with respect to the particular legacy to the Foundation:
The decedent's residence in Rapides Parish, Louisiana, bearing municipal address of 405 Hartwood, Alexandria, Louisiana, which was bequeathed to the Louisiana Baptist Foundation, as Trustee, as set out in Paragraph V above was sold prior to decedent's death and, therefore, this provision of decedent's will is moot.
After payment of the funeral costs, attorney's fee, and the executrix's fee, the succession assets netted $177,243.19. All but $2,500 of this was cash. Stanley and Hilda Dickson were placed in possession of these assets as universal legatees.
After the Foundation learned that it was a particular legatee of the deceased's immovable property, it filed suit to reopen the succession. The petition attacked the validity of the sales on the ground that no price was ever paid and alleged that the sales were in violation of Ms. Dickson's fiduciary duty as Ms. Jackson's agent. The Foundation alleged that the Dicksons were in possession of the property and prayed to be recognized as owner by particular title and sent into possession.
By the time the case went to trial, Ms. Jackson's mental capacity at the time she gave her oral consent to the sale of the property had become an issue, and evidence was introduced regarding her mental capacity. In its reasons for judgment, the trial court saw the only factual issue in the case as being whether Ms. Jackson "lacked the requisite intent to sell her residence and thereby revoke her testamentary bequest." Accordingly, the only issue the trial court addressed in reasons for judgment was her mental capacity. Finding that the Foundation had not proved that Ms. Jackson lacked the capacity to consent to the sale of her residence, the trial court gave judgment in favor of the Dicksons and against the Foundation, dismissing the suit. This is the judgment that has been appealed.
Arguing that the trial court ruled correctly, the Dicksons on this appeal rely on former Louisiana Civil Code Article 1695, which was in effect when Ms. Jackson died, read as follows:
A donation inter vivos, or a sale made by the testator of the whole or a part of the thing bequeathed as a legacy, amounts to a revocation of the testamentary *808 disposition, for all that has been sold or given, even though the sale or donation be null, and the thing have returned into the possession of the testator, whether by the effects of that nullity, or by any other means.
Their brief declares that "the central issue at the trial level and on appeal is whether Ms. Jackson had the capacity to consent to a sale of her home, not the validity of the sale." It is their contention that "[w]hen Jackson consented to the sale of her property, she tacitly revoked the bequest to the Foundation."

OPINION
We do not find it necessary to review, for error, the finding of fact that Ms. Jackson had the capacity to consent to the sale of her home. Nor will we review the admissibility of Ms. Dickson's self-serving and uncorroborated testimony that Ms. Jackson told her she wanted to sell the house and wanted her to have it. Similarly, we will pretermit the question of whether the authority to sell the property in Rapides Parish and receive the price, was "given expressly" in the sense required by Louisiana Civil Code Article 2996, in the "Power of Attorney" to Ms. Dickson. Nor do we need to discuss, as a basis for questioning the validity of the purported sales, whether there was a violation of the relationship of confidence between Ms. Jackson and Ms. Dickson, who were not related by affinity, consanguinity, or adoption.[2] We will not consider these matters because we find that, for other reasons, the property never left Ms. Jackson's patrimony; revocation of the legacy to the Foundation did not occur; and ownership of the property in trust vested in the Foundation upon her death.
Although the Foundation's petition is designated "Petition to Reopen Succession and Distribute Property," we construe it as a petitory action. It has long been the law that a party who claims title by inheritance can maintain a petitory action against a party in possession by virtue of a recorded instrument purporting to invest him with a title to the land in dispute. Long v. Chailan, 187 La. 507, 175 So. 42 (1937). The title by inheritance is the title of his ancestor. Id. The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership. La.Code Civ.P. art. 3651. The substantive law of burden of proof is Louisiana Civil Code Article 531, which requires that one who claims ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. Procedurally, this rule is found in Louisiana Code Civil Procedure Article 3653(1) dealing with proof requirements in a petitory action.
The Foundation claimed ownership by succession. Succession is a mode of acquiring ownership of property. La.Civ. Code art. 870. The probated last will and testament contained a disposition of the property to the Foundation. When the titles of the parties are traced to a common author, he is presumed to be the previous owner. La.Civ.Code art. 532; La.Code Civ.P. art. 3653. The parties in this case both trace their titles, one by *809 succession and the other by an inter vivos acquisition, to Ms. Jackson. The Foundation's burden required proof that it acquired ownership from Ms. Jackson. Therefore, the Foundation proved its ownership if it proved that the property was part of her patrimony when she died.
In their answer to the petition, the Dicksons admitted their possession and denied the Foundation's allegation of ownership by pleading that they had acquired ownership by purchase from Ms. Jackson, pursuant to her wishes, and that this was a revocation of her testamentary disposition. They claimed that the Foundation did not inherit it because Ms. Jackson did not own it at the time of her death.
To prove its case that it was the successor of the property at the time of Ms. Jackson's death because it was still a part of her patrimony, the Foundation, as Plaintiff, went forward with its evidence. The probate of the testament containing the particular legacy was put in evidence by stipulation, as was the "Power of Attorney." All of the documentation surrounding the casecertified copies of conveyances and the mortgage from the public records, bank records, and canceled checkswere likewise stipulated and placed in evidence as joint exhibits. The Foundation's testimonial proof included the testimony on cross-examination of Hilda Dickson, Patricia Dickson, Stanley Dickson, and Kenneth Ray Dickson, the principals in the conveyances. It completed its case with the testimony of Kenneth Wayne Taylor, the Executive Director-Treasurer of the Louisiana Baptist Foundation, who testified that the Board of Directors wished to accept the legacy.
This is the evidence which we have outlined earlier in this opinion and on which we base our decision. We find that the Foundation has borne its burden of proof.
The series of transactions did not convey ownership and the property never left Ms. Jackson's patrimony. The facts leave no doubt that what was transacted was actually a donation made to look like sales. No money changed hands. Ownership was not conveyed by means of these documents, because one person may not donate the property of another without express authority. The "Power of Attorney" was executed by Ms. Jackson alone. It was what our civil code calls a procuration, a unilateral juridical act by which Ms. Jackson conferred authority on Ms. Dickson to represent her in legal relations. La.Civ. Code art. 2987. Procurations are governed by the rules governing the contract of mandate, unless such application is incompatible with the procuration. La.Civ. Code art. 2988. Under Louisiana Civil Code Article 2997 dealing with mandate, express authority is required to make an inter vivos donation. There was no authority given in this procuration for Ms. Dickson to make a donation of Ms. Jackson's property for her. There is not even a contention that Ms. Jackson later ratified the transactions. Therefore, the purported dispositions did not convey ownership.
Former Louisiana Civil Code Article 1695 allowed a testator by his own act to revoke a testament by the alienation of the thing bequeathed by donation or sale. The current counterpart is Article 1608(3) which provides that revocation of a legacy or other testamentary provision occurs when the testator makes a subsequent inter vivos disposition of the thing that is the object of the legacy and does not reacquire it. Because there has been no alienation of the property by the testatrix, neither former Article 1695 nor current Article 1608(3) can apply.
As we understand the second, and alternative argument of the Dicksons, it is based on the language of Louisiana Civil Code Article 1691, as it read in 1996, that a tacit revocation resulted from "some act which supposes a change of will." The Dicksons argue that even if the conveyances were not translative of title, the verbally expressed intent of Ms. Jackson, that she wanted to sell her house and that the Dicksons could buy it, was an act of *810 the testatrix manifesting a change of will, amounting to a tacit revocation, with the result that the Dicksons have become the owners of the property as universal legatees.
We reject this argument. An oral declaration of a desire to alienate is not an act of alienation, and cannot have the effect of a revocation. Nowhere in the jurisprudence have we found a case holding that an "act which supposes a change of will" includes the mere intent to revoke a will. To the contrary, there are several decisions holding that the mere oral declaration of intent to revoke a will or disposition in a will does not effect a revocation.
In the landmark case of Succession of Hill, 47 La. Ann. 329, 16 So. 819 (1895), it was held that "acts and declarations" did not tacitly revoke a testament under Article 1691. In that case, the testatrix threw her will in the trash. When it was found and given to her, she stated she had revoked it. She added that she wanted it destroyed. Nevertheless, the will was kept in her home with other papers. During the remainder of her life, the testatrix stated on several occasions that she had made a will but had revoked it. Prior to her death, she obtained a will form with the intent to make out a new will but did not do so. The court sustained the probate of the will, saying:
"`Under article 1691, as explained by subsequent articles, there are only two modes of revoking a valid testament, the one by a written instrument clothed with the formalities of a last will and testament; and the other by a donation inter vivos, or a sale of the thing, in part or in whole, bequeathed. The acts and declarations of the testator do not come within the tacit revocation expressed in the Code.'"
Succession of Hill, 16 So. at 821.
Again interpreting "some act which supposes a change of will" the court in Succession of Tallieu, 180 La. 257, 156 So. 345 (1934) held that the mere drawing of pencil marks by the testatrix across certain provisions in the body of a will cannot be classified as an act coming within the terms of Article 1691 and did not effect a revocation. The court quoted the above language from Succession of Hill.
In Succession of Jones, 356 So.2d 80 (La.App. 1 Cir.), writ denied, 357 So.2d 1168 (La.1978), the persons who stood to benefit by the destruction of a will destroyed it after the testator's death and testified at trial that the testator had repeatedly requested that it be destroyed. The court permitted probate of a copy. The court held that mere intent to revoke a will does not per se effect revocation because such intent must be implemented either by a method of revocation authorized by Article 1691 or by intentional destruction of the instrument. Otherwise, the testator's intent to adhere to the will is presumed.
In Succession of Boyenga, 424 So.2d 414 (La.App. 2 Cir.1982), writ granted, 430 So.2d 81 (La.1983), affirmed, 437 So.2d 260 (La.1983), the testator made arrangements with an attorney to prepare a new will to change the attorney designation in the existing will, but before the new will could be prepared, the testator died. The appellate court held that the testator may not orally revoke a testamentary disposition.
Thus, we find there was no revocation of the disposition and that ownership of the property in trust vested in the Foundation upon the testatrix's death. Ownership of property of a particular legacy vests in the legatee upon the deceased's death. Baten v. Taylor, 386 So.2d 333 (La.1979). Present Louisiana Civil Code Article 935 states that immediately at the death of the decedent, particular successors acquire ownership of the things bequeathed to them. Ms. Jackson's residential property was still part of her patrimony when she died. Therefore, the Foundation became the owner of the property in trust when she died.
The Foundation's petition to reopen the succession and be placed in possession of *811 the property must be granted. The Foundation, as owner of the property by succession, has the right to take possession of it. La. Civ. Code arts. 870-71.
For the foregoing reasons, we reverse the judgment of the district court. We hold that the Louisiana Baptist Foundation is the successor by particular title to the immovable property rights described in the last will and testament of Bessie Cantrell Jackson. We remand with instructions that the district court allow the succession to be reopened and that an amended judgment of possession be rendered to implement our decree. Costs of this appeal as well as costs below relating to the proceedings to reopen the succession will be paid by Stanley J. and Hilda L. Dickson, individually.
REVERSED AND REMANDED.
WOODARD, J., dissents and assigns written reasons.
WOODARD, J., dissenting.
I respectfully dissent.
The legal conclusion, which the majority reaches in this case, is totally dependent upon what one believes the facts to be. There is an abundance of evidence in the record to support the trial judge's findings; thus, he did not commit a manifest error. Therefore, reversal is inappropriate.
The ultimate determinative facts are whether one believes that Ms. Jackson asked her attorney-in-fact, Ms. Dixson, to sell her home and approved of the Dixsons buying itnot whether the sale (which was evidenced by a promissory note and mortgage prepared by an attorney) was validly effected.[1] In other words, regarding disposal of property under these circumstances, the only factor that the legislature considered to be important is the testator's intentnot the efficacy of the legal procedure or document fulfilling that intent. The legislature expressly provided that the bequest shall be revoked "even though the sale or donation (of the bequest) be null." Ms. Jackson's intent was a factual determination, which required a credibility call. Under our jurisprudence, this is the exclusive purview of the trial judge. He believed the Dixsons.
NOTES
[1] The legal description of the property is:

Tract I:
A certain piece, parcel or tract of land, together with all buildings and improvements thereon, being, lying and situated in the Parish of Rapides, State of Louisiana, being more particularly described as follows:
Lot Forty-One (41) of Briarwood West, a subdivision of the Mike Mule Tract in Sections Twenty-Nine (29), Thirty (30) and Eighty-Four (84), Township Four (4) North, Range One (1) West, as per plat thereof recorded in Plat Book 14, Page 28 of the records of Rapides Parish, Louisiana.
Tract II:
A certain piece, parcel or tract of ground, together with all buildings and improvements thereon and all rights, ways and privileges thereunto appertaining, being, lying and situated in Rapides Parish, Louisiana and being part of Lot Forty-Two (42) of Briarwood West, a subdivision of the Mike Mule Tract, and Sections Twenty-Nine (29), Thirty (30) and Eighty-Four (84), Township Four (4) North, Range One (1) West, Alexandria, Rapides Parish, Louisiana, as per plat thereof by Daniel E. Sandefur, CE, dated June 30, 1969 recorded at Plat Book 14, Page 28, Plat Records of Rapides Parish, Louisiana, said property being more particularly described as follows, to-wit:
Begin at a point common to Lots Forty-One (41) and Forty-Two (42) of Briarwood West and Hartwood Drive and run along the line dividing Lots Forty-One (41) and Forty-Two (42) a distance of 154.4 feet to a point, to Lot Two (2) of Briarwood West; thence turn to the right and run along the rear line of Lot Forty-Two (42) a distance of 1 foot to a point; thence turn to the right and run along the line parallel to the line dividing Lots Forty-One (41) and Forty-Two (42) of Briarwood West to a point on Hartwood Drive; thence turn to the right and run along Hartwood Drive back to the point of beginning of the herein described property, being a portion of that property acquired by Govie S. Thornhill from William A. Carruth, Jr. by Act dated July 27, 1971 in Conveyance Book 780, Page 286, records of Rapides Parish, Louisiana.
[2] The record does not reveal specifically why it was decided to employ this series of transactions. The deposition of the attorney who prepared the sale instruments was taken and filed into evidence. When asked questions that perhaps would have explained why the testatrix did not simply sign a conveyance herself, if that was what she wanted, the attorney would not answer the questions because of the attorney-client privilege. Mr. and Ms. Dickson were present at the taking of this deposition. When pressed for a waiver of the privilege, their counsel stated: "By law he cannot answer the question unless there is a waiver, my clients have not waived it, we will state on the record they have not waived it." The Foundation did not pursue the matter further.
[1] La.Civ.Code art. 1695.