No. 11,626.

SUCCESSION OF MRS. JANE K. HILL.

Under Art. 1691, C. O., as explained by subsequent articles, there are only two
modes of revoking a valid testament—the one by a written instrument, clothed
with the formalities of a last will and testament, and the other by donation
*inter vivos* or a sale in whole or in part of the thing bequeathed.

The defacement, obliteration or destruction of the will leaves no will in existence
and the Code, probably for this reason, has not named the destruction of the
will as one of the evidences of revocation.

The finding of a will in an unusual place, and its apparent abandonment among
waste papers, if it is a valid will, does not raise a presumption that the testator
intended to revoke it.

After the placing of the will among waste paper, and it is offered to the testator,
and he refuses to receive it, saying he wanted it destroyed, his actions toward
the legatee, treating him as one he does not like, and his unsuccessful efforts
to make another will, do not amount to a revocation. The fact that the testa-
tor had it in his power to destroy or obliterate the will, and failing to do so,
and leaving it in existence, is a presumption that he intended it to be his last
will and testament.

APPEAL from the Civil District Court for the Parish of Orleans.
  *Theard, J.*

*Frank L. Richardson* for Plaintiffs and Appellants.

*Charles E. Fenner* and *Charles P. Fenner* for Defendants and Ap-
pellants.

The opinion of the court was delivered by

McENERY, J. This is a suit by two collateral heirs of deceased to
annul her last will and testament and to set aside its probate.

The petition avers that the deceased died on the 6th December,
1893, and that her succession was regularly opened and an adminis-
trator appointed; that the deceased left no forced heirs. That sub-
sequently a paper, purporting to be the last will and testament of the
deceased, was probated and a dative testamentary executor ap-
pointed; that an inventory was taken of her effects, amounting to
forty-three thousand dollars in cash, which amount was in the hands
of the executors for distribution. The petitioners allege that said
paper writing purporting to be the last will and testament of Mrs.
Jane K. Hill is not in fact her testament, but that she died intestate.

That after making said will, which is in olographic form, the de-
ceased underwent a change of feeling to the beneficiary, Ariana
Lowry, and that she revoked and annulled the same in the form
and in the manner pointed out by law, as follows: by a tacit revoca-
tion resulting from acts which suppose a change of will. She threw
the said purported will away among a lot of wa_te and worthless
papers, when she was provided with bank boxes and other recep-
tacles to keep and secure all her valuable papers, and where she
kept all her valuable papers, and even those of no value.

That shortly after this tacit revocation the said purported last will
and testament of the said deceased was found among said waste
papers, and brought and offered to the said deceased, who, there-
upon, declared that she had revoked and annulled said will, and that
she did not want the paper and that she desired the same destroyed.
That said purported last will and testament lay around with the
waste papers about the house of petitioner, Philip Jones, in Jackson,
La., and was finally thrown with them into an unlocked drawer in an
armoir not used by the said deceased and not in the same room which
she occupied, and said will was not placed in the custody of any one.
That the said deceased subsequently declared to her friends that she
had made wills during her lifetime, but that she had revoked and
annulled them all; that she had none then, and that she would make
some disposition of her property before she died in favor of those
she cared for, but not one of the said persons was the beneficiary in
the probated will. That in pursuance of these declarations, a short
time before her death, she obtained from her financial adviser the
form of a will, declaring that she would immediately write out the
said will, but her physical condition prevented her from doing so,
and she died without accomplishing her purpose, as no such will has
been discovered. That all of the above acts and declarations of the
deceased showed that she had revoked and annulled the last will and
testament probated, and the deceased, therefore, died intestate.
The prayer of the petition is "that the said purported last will and
testament of the said Mrs. Jane K. Hill, deceased, be declared
avoided and annulled, and the probate thereof set aside, and peti-
tioners be recognized as the heirs of the said deceased in the pro-
portion of one-fifteenth each," etc.

To this action the executor filed an exception of no cause of action,
which was maintained and plaintiffs' suit dismissed. They appealed
from the judgment.

Summarizing the facts as stated in the petition for the ground for revocation of the testament, they are as follows:

1. The refusal to receive and take into her possession her own will when asked to do so, coupled with her act in leaving it for many years in charge of no one, in ı house not her own and not her home, among old papers and letters thrown away and abandoned.

2. Her subsequent effort to make another will, obtaining a form therefor, coupled with a statement of a change of mind and intention to make this other will.

3. Her actions toward the legatee, treating her as one she disliked.

The putting of the will among waste paper, whether intentionally or not, does not even raise a presumption that it was the intention of the testator by this act to revoke the testament. Succession of Blakemore, 43 An. 845.

In the case cited the will was found ten years after the death of the testator among worthless papers in a valise in a locked room.

In State vs. Ames, 23 An. 72, the facts show that at the time of the death of the testator Field, a diligent search was made for a will and none found. An administrator was appointed, and during the administration, two years after the death of the testator, a will, duly executed by the testator, was found attached by paste to the under side of a tray of a common leather trunk which had been in the possession of the defendant Ames since the death of the testator. The wife of Ames was made by the will universal legatee. The will was probated, and the defendant, as the universal legatee of his late wife, was quieted in the property bequeathed to her as universal legatee of Field. The finding of the will in a strange and unlooked-for place, under novel circumstances and conditions, may throw some suspicion upon its execution by the testator, but when it has been proved to be his last will, the facts of its novel location are not to be invoked as evidence of an intention to destroy or revoke it. In this case it was said by the court that " we should bear in mind that examples are not wanting of whims and vagaries displayed by testators as well in regard to the places chosen to deposit their wills as to their contents. * * * The important point in such a case is to determine, if possible, whether the instrument be genuine or not."

In the instant case there is no dispute as to the genuineness of the will made by the testatrix and found under the circumstances related in the petition.

Eliminating the place where the will was found and the apparent abandonment of it by the testatrix, did the declaration of the testatrix subsequent to the making of the testament, as stated in the petition, amount to and have the effect of a tacit revocation of the testament?

Article 1691 of the Civil Code defines the revocation to be express tacit, general or particular.

Article 1692 of the Code says the act by which a testamentary disposition is revoked must be made in one of the forms prescribed for testaments and clothed with the same formalities. This article refers to the revocation as defined as express, general or particular. Art. 1693, C. C.

The tacit revocation "is when it results from some other disposition of the testator or from some act which supposes a change of will." C. C. 1691. The "other disposition" referred to means when the testator has made another testament, and the disposition therein is such as to tacitly destroy the effect of a prior disposition, and the language "from some other act which supposes a change of will" is to be interpreted and explained by the following article of the Code, 1695, which says: "A donation *inter vivos*, or a sale made by the testator of the whole or a part of the thing bequeathed as a legacy, amounts to a revocation of the testamentary disposition for all that has been sold or given, even though the sale or donation be null and the thing have returned into the possession of the testator, whether by the effect of that nullity or by another means."

Under Art. 1691, as explained by subsequent articles, there are only two modes of revoking a valid testament—the one by a written instrument clothed with the formalities of a last will and testament, and the other by a donation *inter vivos* or a sale of the thing in part or in whole bequeathed.

The acts and declarations of the testator do not come within the tacit revocation expressed in the Code. The will as exhibited in the transcript is perfect in form, and unaccompanied by any fact that appears on its face indicating any purpose of the testatrix to change or alter it. It was in the possession of the testatrix and she could have erased her name, or that of the universal legatee, or could have destroyed it. She neither erased a name, destroyed a signature, or mutilated the will. When again offered to her, after it was placed by her among waste papers, she did not alter it or destroy it. The fact

that there was no erasure of her signature or that of the legatee, and the will was in existence at the time of her death, is, we think, evidence that she did not intend to alter her mind in relation to her disposition in the testament. The fact that she had declared that she would make another will and change her bequest can not have the effect of a revocation. The fact still remains that she did not do it. Until the change of mind or intention is expressed in the mode pointed out by law, the original intention is presumed to exist.

The plaintiff relies upon the decision in the case of Succession of Muh, 35 An. 394.

In that case we think, in the opinion, there was, in the language of the court, some confusion in treating the destruction of the will, with its revocation, and construing Art. 1691 of the Code as referring to acts which amount to a destruction of the testament. The facts in the Succession of Muh related to erasures made by the testator.

The description of the erasures and the effect thereof is thus expressed by the court in the opinion: "That his intention was to annul the will, make it void and of no effect, can not reasonably be doubted. The painstaking and elaborate defacing and blotting out the signature was the act which, to his apprehension, destroyed it as a will. The obliteration of the names of 'the executors was almost as complete, but the legacies that were not intended to be repeated had simply an ink line drawn through them and the sentences that were untouched received marginal additions as memoranda, or were left entire for use in copying." The testator had made these obliterations with the intent to destroy the will, and what was left untouched was to be used in the completion of another testament. There was a total destruction of the will by obliteration, defacement and erasure.

The Code nowhere speaks of the destruction of a testament as a means of revocation, for we presume, if the testament was destroyed, there was an end of all testamentary disposition so far as that testament was concerned, and the testator was in a situation as though he had never disposed by last will, and there existed no necessity for an express or a tacit revocation. If the testator burns or tears up the will, there is no will in existence, no testament that can be probated. And the same may be said by obliteration, defacement, the erasure of names of legatees, and the erasure of the testator's

signature. In either case there is no will in existence, and no question of revocation can be presented. But no more complete revocation could be made than by the destruction of the testament. Art. 1691 of the Code does not mention it as a mode of revocation.

In the case of Hollingshead vs. Sturgis, 21 An. 450, in which the facts stated for the revocation of the testament, olographic in form by a posterior will in nuncupative form, and also by a letter written by the testatrix to her mother, in which she said the universal legatee in the olographic will should not have one cent of her property, the facts are stronger than in the instant case. "This letter," the court said, "does not furnish evidence of that formal and solemn character necessary to establish the revocation of a will."

And in this case we conclude that the acts of the testatrix and her declarations were not expressed in that solemn form required for the revocation of her testament, and the fact of the existence of the will, under the circumstances of the case, justify the conclusion that she did not intend to recall, nor did she recall, the testament which she had made.

Judgment affirmed.