JANVIER, Judge.
This matter is before us on appeal by the proponent of the purported last will and testament of Narvel George Makofsky from a judgment maintaining oppositions to the will, and declaring it to be “null and void and of no effect by virtue of being revoked by being mutilated by being torn up.”
It is conceded that the decedent, Narvel George Makofsky, executed the document in controversy on January 31, 1959, under the provisions of LSA-R.S. 9:2442.
It is also conceded that two months or more prior to his death he intentionally tore the one page document into seventeen pieces.
James David McNeill and Milton Boylan were named executors in the document and certain bequests were made, some of them to persons other than legal heirs.
The decedent died on June 2, 1959. On June 4, 1959, the legal heirs of the decedent petitioned for the opening of the succession, praying that an inventory be taken and making no mention of a will. On July 8, 1959, in the succession proceeding which had already been opened by the legal heirs there was filed a petition praying for the probate of a last will and testament, which, according to the allegations of this petition, had been left by the decedent. In this petition Milton Boylan and James David McNeill were both set forth as petitioners and it was prayed that the said will be admitted to probate. Milton Boylan, however, has since abandoned all interest in the proceeding.
On July 15, 1959, after this petition had been filed but before the will was actually produced for probate, a sister of the decedent filed opposition to the probate, basing her opposition on several grounds, one of which is stated in the petition as follows:
“A. That decedent revoked the purported will by virtue of the actual physical destruction, mutilation and defacement thereof performed by himself, which destruction will appear by simple reference and inspection to the fragmentary document itself which is being offered for probate and which is on file herein and which has been assembled together by someone other than decedent after decedent’s death.”
On the same day and also before the will was presented for probate, other legal heirs of the decedent also appeared by petition and opposed the probate of the will on practically all of the same grounds and in their opposition also alleged that the will had been revoked, making an allegation practically identical with that just above quoted. Later, by supplemental petition, certain other objections were presented to the probate of the alleged will.
The District Judge refused to probate the will, and in his reasons decreed the will; *279 to be null and void for the reasons already-set forth.
Only James David McNeill has appealed from this judgment.
At the start of our discussion it is well to note that most important testimony was given by one Merrill W. Wendel, who was not a legal heir and who, therefore, would have received nothing had there been no will, but who, under the will, would receive the usufruct of a fishing camp which was owned by the decedent. According to the testimony of Wendel, on a day which he says was “sometime in March” and which was, therefore, more than two months before the death of the decedent, at the request of Makofsky, he went to his home and there Makofsky took the will, which, at his request had been taken out of a locker box, and, after saying that he, Makofsky, had not “done right” by Wendel, tore it (the will) up and put it on the card table, and said to Wendel: “I haven’t done right by you. I want to leave you a little bit more. I want to leave you more than what I did.”
Wendel says that he then told Makofsky that all that he desired was the right to use the camp and that Makofsky then said: “Okay, if that is what you want.” He says that Makofsky then said: “There is a will. Take it. My lawyers have got a copy.” Wendel says that he took the pieces of the will home, but that he “never read it” and that much later Mr. McNeill put it together, and that “then I knew what was in it.”
The legal question which is presented, if the testimony sets forth the true facts, and, in passing we say that, if true, the facts are most remarkable, is whether or not a testator who makes such a statutory will as is authorized by LSA-R.S. 9:2442, and then intentionally himself tears it up, may by requesting someone else to paste the pieces together re-create it as a will by that act of the other person in pasting the pieces together at a later time.
It should be remembered that the protests were filed before the will was admitted to probate and that, therefore, if any facts were in dispute the burden of proving those facts would have rested upon the proponent of the will. In Succession of Lirette, 5 So.2d 197, 198, the Court of Appeal for the First Circuit said:
“Relative to this question, we are of the opinion that where a will has been probated as required by law, the probating of the same makes prima facie proof of its genuineness; if the will is thereafter attacked, the burden of proof rests upon the opponent to prove its invalidity. But a different rule applies when the probate of the will is opposed ab initio, the rule then being that it is incumbent upon the proponent of the will to produce proof of its execution and its genuineness and/or its validity. The rule of evidence in such a case is governed by Civil Code, Article 2245, and Code of Practice, Article 325, rather than Civil Code Article 1655, in the former. This distinction is made clear in the cases of Succession of Gaines, 38 La.Ann. 123; Succession of White, 132 La. 890, 61 So. 860; Succession of Wadsworth, 152 La. 131, 92 So. 760.”
Therefore, if it had become necessary to dispute the veracity of the statements of Wendel the burden of proof would have rested upon McNeill, the proponent of the will.
However, again assuming for the moment that the statements of Wendel are entirely true, we nevertheless are confronted with the much more interesting legal question which has already been stated.
It is, of course, conceded that if a testament is accidentally destroyed or torn into pieces, or lost it nevertheless may be proven if the necessary proof is available. Here the destruction was not accidental. Even according to the testimony of Wen-del it was the testator himself who tore the will into pieces and it is also the testimony of Wendel that the testator did this with the intention of revoking that will.
*280 Counsel for McNeill confidently rely upon the decision of our Supreme Court in Succession of Swanson, 131 La. S3, 58 So. 1030, 1032, as authority for the view that, where a testator ■ tears up a testament, it may be re-created with its full original effect. It is true that in that case a torn up will was admitted to probate and given full effect, but the situation here is distinguishable for several reasons. In the first place, the Swanson will was olographic, that is, it was entirely written, dated and signed by the testator himself. No notary or witnesses were required. Here, the will was originally executed under authority of a special statute which requires certain carefully set forth formalities among which are the requirements that it must be signed by the testator, the witnesses and the notary, and that there must be in it a carefully worded statement to the effect that those requirements have been complied with. In the second place, in the Swanson case the will was not torn up by the testator but by someone else who thought that since it had been written in pencil, it was invalid as a will. The testator himself obviously was not satisfied that the will was invalid for he gathered the torn pieces together and himself “pasted them on a sheet of paper,” and “kept this reconstructed instrument about his person for several years.” The Supreme Court referred to the fact that it was not the testator himself who had torn up the will.
In the case at bar Makofsky himself tore up the will and someone else, who to some extent was interested in having the will recognized as valid, took the pieces and later presented them to an attorney who then pasted them together.
This type of will is quite different from an olographic will which the Supreme Court considered in the Swanson case since in the making of an olographic will the testator himself, without the aid of anyone else, prepares the entire document whereas in the making of the statutory will involved here several other persons and several, other requirements are necessary.
When Makofsky tore up the will he intended to revoke it and at that moment it became as completely ineffective as though it had never been written.
Even if he himself had pasted the pieces together we doubt that by that act he could have breathed life into a dead document. That act of his would not have supplied the necessary requirement for the execution of a will under that special statute. But even if he himself, by pasting the pieces of the document together, could have recreated it, we have no doubt at all that he could not do so by giving the testament to someone else with instructions to keep those pieces as a will.
The original will became effective only because of strict compliance with legal requirements. When that original will was torn up it could not be reconstructed except by compliance again with those particular requirements. As a substitute for those requirements, that is, the signatures, of the witnesses and the notary and the statement that all signed together, we have here only the statement of one person who was not a witness to the will and who-will benefit by having the will declared, valid.
In Smith v. Shaw, 221 La. 896, 60 So.2d 865, 866, our Supreme Court set forth the-various methods by which a will may be revoked and said:
“ * * * while the Code does not specify that the destruction of a testament constitutes a revocation thereof, the fact of intentional destruction by the testator as constituting the most effective method of invalidation has been recognized by this Court on many occasions. See Succession of Muh, 35 La.Ann. 394; Succession of Blakemore, 43 La.Ann. 845, 9 So. 496; Succession of Hill, 47 La.Ann. 329, 16 So. 819; Succession of Batchelor, 48 La. *281 Ann. 278, 19 So. 283; Succession of Tallieu, 180 La. 257, 156 So. 345; Succession of Dambly, 191 La. 500, 186 So. 7.”
The Court quoted the following from Succession of Hill, supra:
“ * * * if the testatment was destroyed, there was an end of all testamentary disposition, so far as that testament was concerned, and the testator was in a situation as though he had never disposed by last will, and there was no necessity for an express or a tacit revocation. If the testator burns or tears up the will, there is no will in existence; no testament that can be probated.”
We are fortunate in having available the translation, which was effected by the Louisiana State Law Institute “Traité Élémentaire De Droit Civil” by Planiol, and we are interested in his discussion of the methods by which a will may be revoked and the effect of the tearing up of a will. We note that according to Planiol, if a testator desires to revoke an olographic will which he has kept in his possession, “he simply tears it up or burns it.” Vol. 3, page 387. We note also that: “When the revocation is withdrawn, the old will comes back in force as if it had never been revoked, * * But we note also that this is true provided that “it still materially exists.” Planiol follows this with the statement that “it would not regain its force if it had been torn up or burned.” Vol. 3, page 388.
Our opinion is that, when the testator revoked this statutory will by tearing it into pieces, it could not be re-created by the act of someone else in pasting the pieces together. And we conclude, therefore, that the judgment which refused probate of the will was correct.
Accordingly the judgment appealed from is affirmed at the cost of appellant.
Affirmed.