341 So.2d 459 (1976)
J. Daniel RIVETTE, Plaintiff-Appellant,
v.
Regis MOREAU (Estate of Emily Mistric), Defendant-Appellee.
No. 5194.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1976.
Rehearing Denied January 26, 1977.
*460 Daniel J. McGee, Mamou, Andrew Vidrine, Church Point, for plaintiff-appellant.
Sandoz, Sandoz & Schiff by Lawrence B. Sandoz, Jr., Opelousas, for defendant-appellee.
Before CULPEPPER, WATSON and GUIDRY, JJ.
WATSON, Judge.
The last decision of this court, Rivette v. Moreau, 322 So.2d 790 (La.App. 3 Cir. 1975); writ granted, 325 So.2d 614; reversed and remanded, 336 So.2d 864 (La., 1976), held that the issue of whether the decedent, Emily Mistric Moreau, had revoked a statutory will before her demise was barred by res judicata. The matter has been remanded to this court by the Louisiana Supreme Court for determination of this question on the merits.
Procedurally, this litigation originated when Regis Moreau, the surviving husband of Emily Mistric Moreau, was placed in possession of his wife's estate under the provisions of an olographic will. An opposition was filed by J. Daniel Rivette, who alleged that the olographic will was invalid and asked for probate of a statutory will naming him as executor. The trial court invalidated both wills, declaring the testatrix incapable, at the respective times they were executed, of reading the statutory will and writing the olographic will. No appeal was taken from the judgment annulling the olographic will, and it is final. As to the statutory will, the trial court was reversed in Estate of Moreau v. Moreau, 261 So.2d 293 (La.App. 3 Cir. 1972); writ denied, 262 La. 193, 262 So.2d 789. This court there decided that the decedent had the capacity of executing the statutory will, as required by LSA-R.S. 9:2443, and remanded.
This further opposition to the statutory will was based on a contention that it was revoked by the decedent prior to her death. The trial court concluded that revocation of the statutory will had not been proven by Regis Moreau, decedent's husband, but that the proponents of the will had not proved the contrary. The trial court applied a presumption of revocation because the will was executed in duplicate originals and one of the originals was missing. Therefore, the statutory will was held to be invalid. This court decided the issue of revocation should have been barred by an exception of res judicata because of the previous decision in Estate v. Moreau v. Moreau, supra. The Supreme Court found error because the only object of the Court of Appeal judgment in its prior decree was reversal of the trial court judgment as to decedent's capacity to make the will.
After consideration of the issue of revocation on the merits, we again reverse the trial court judgment which decreed the statutory will invalid.
The codal articles governing revocation of testaments are LSA-C.C. arts. 1690 through 1711. Pertinent to this litigation are the following:
LSA-C.C. art. 1690:
"Art. 1690. Testaments are revocable at the will of the testator until his decease.
The testator can not renounce this right of revocation nor obligate himself to exercise it only under certain words and restrictions, and if he does so, such declaration shall be considered as not written."
LSA-C.C. art. 1691:
"Art. 1691. The revocation of testaments by the act of the testator is express or tacit, general or particular.
"It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.

*461 It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
It is general when all the dispositions of a testament are revoked.
It is particular when it falls on some of the dispositions only, without touching the rest.
However, in all cases, a legacy or disposition shall be deemed revoked in the event that the legatee has unlawfully taken the life of the testator, and said legacy or disposition shall be deemed not written."
LSA-C.C. art. 1692:
"Art. 1692. The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities."
There is no question that the decedent, Emily Mistric, did not revoke her statutory will according to LSA-C.C. art. 1692. The contention that the will was revoked relies on revocation by destruction. As pointed out in the article at I Louisiana Law Review 464:
"Nowhere in the Code is it provided that the destruction of a will revokes it. This is no doubt due to the simple reason that after destruction of the testament there is no will in existence and the testator has placed himself in the same situation as though he had never executed a will. To accomplish revocation by destruction, if the inference conveyed by silence on the part of the Civil Code is to be given effect, the destruction must be so complete as to render it impossible to offer the whole will in court for probation." I La. L.R. 467-468.
The evidence establishes that on May 5, 1964, Emily Mistric Moreau and her husband, Regis Moreau, in company with J. Daniel Rivette, his nephew and her second cousin, and Mrs. Adolph Dupuis, Sr., his sister and her first cousin, went to the office of Andrew Vidrine, an attorney in Church Point. Statutory wills were prepared by Vidrine for both Mr. and Mrs. Moreau and these were witnessed by Louis B. Arceneaux, a bookkeeper who operated a furniture store next door to the office, and Hilda Venable, now Mrs. Latiolais, secretary to Vidrine. Regis Moreau said the wills were read to him and his wife before they were executed. Vidrine said the wills were read in both French and English, as did Arceneaux.
Mr. and Mrs. Moreau were childless. Her statutory will left her husband the usufruct of all her property. The ownership of various tracts of land was given to: a nephew, Herman Dupuis; a niece, Hazel Mistric Prejean, a great-niece, Linda Faye Cassio; and nephew Rivette. Her cattle were left to Florine Ann Prejean and James Benjamin Cassio, and the remainder was left to Herman Dupuis, Hazel Mistric Prejean, Linda Faye Cassio, J. Daniel Rivette and Francis Lloyd Mistric. Rivette was appointed executor and Andrew Vidrine attorney for the executor. Both the original and a carbon copy of this will were executed by Mrs. Moreau and the witnesses. Since both wills were witnessed and signed, they were "of equal dignity and force". Jones v. Mason, 234 La. 116, 99 So.2d 46 (1958). One original was left at Vidrine's office and the other was given to Mr. Moreau who later gave it to Rivette for safekeeping. Moreau subsequently obtained possession of the duplicate original from Rivette but returned it to Rivette. Just prior to Mrs. Moreau's death in December of 1967, when she was in a weakened condition and functionally blind, Mr. Moreau called Vidrine and asked for his and his wife's wills. They were mailed to him. Regis Moreau said he received them about twenty days before his wife's death, and he told his wife at this point that these statutory wills were not what they wanted. He had had a money dispute with Rivette in the interim and no longer wanted Rivette as a beneficiary. Two nephews of Regis Moreau, Frank Moreau and L. B. Carriere, both recalled Mrs. Moreau saying that the wills made at Vidrine's office were not what they wanted. Regis Moreau's testimony that the wills were burned after their receipt from Vidrine was contradictory. At one point the destruction was by his wife; at another *462 point by him; and at still another point they did it together. His testimony about when this was done is also conflicting. Although Mr. Moreau is an elderly man who is apparently more comfortable in French than English, his testimony about the destruction of the wills is not convincing. Andrew Vidrine stated that Regis Moreau brought the original wills to Vidrine's office after his wife's death and asked him if the wills were good. Frank Moreau and Calvin Moreau, who accompanied Regis Moreau on this visit, could not testify positively to the contrary, although they recalled only a discussion about a note Regis Moreau wanted Vidrine to help him collect from Rivette. The duplicate original of Mrs. Moreau's will, which had been in Rivette's office, remained there until long after Mrs. Moreau's death.[1] Regis Moreau admitted that he did not even ask Rivette for the duplicate original until after his wife's death.
According to the clear, unambiguous testimony of Vidrine, the original of Mrs. Moreau's statutory will was in existence after her death. It is undisputed that the duplicate original was in the possession of Rivette after her death.
Any intention Mrs. Moreau may have had to revoke her testament was not clearly expressed. The decedent executed a valid statutory will; this will was in existence at the time of her death; and, as the trial court said, the burning of the statutory will is uncorroborated. In re Succession of Nunley, 224 La. 251, 69 So.2d 33 (1954) was relied upon by the trial court to place the burden of proof on the proponents of Mrs. Moreau's statutory will to prove absence of revocation. Nunley holds that, when an olographic will, which was in the possession of or accessible to the deceased, cannot be found after death, there is a rebuttable legal presumption of revocation by destruction. The later case of Jones v. Mason, supra, states that the presumption of Nunley is "... at the most a weak one....", 99 So.2d 49. Here, the statutory will executed by Emily Moreau was mailed to her husband shortly before her death in December of 1967. It was not found when a search was instituted after her death. A presumption of revocation by destruction does not apply because:
(1) The original will was still in existence after Mrs. Moreau's death;[2] and
(2) The duplicate original of the will was never destroyed.
Revocation of a will must be: with the formalities required of testaments; by means of a contrary testamentary disposition; or by destruction of the will by the testator.
Mr. Moreau clearly did not want Rivette as a beneficiary of his wife's will, but an intention on her part to revoke her will has not been proven. Regis Moreau's act cannot operate to invalidate the will of his wife. Compare Succession of Makofsky, 120 So.2d 277 (La.App.Orl.1960). The record over nine years establishes convincingly that Mr. Moreau has attempted to substitute his opinion as to the disposal of his wife's estate for her testamentary dispositions. Her testamentary intent, as expressed in the duplicate original of her statutory will, must be given effect.
For the foregoing reasons, the judgment of the trial court herein is reversed. It is hereby ordered, adjudged and decreed that the statutory will of Emily Mistric Moreau dated May 5, 1964, be recognized as her last will and testament. The matter is remanded for further proceedings according to law.
All costs of this appeal are assessed against defendant-appellee, Regis Moreau.
REVERSED AND REMANDED.
PER CURIAM.

ON REHEARING
According to a certificate dated January 6, 1977 by Honorable Harold J. Sylvester, *463 Clerk of Court, St. Landry Parish, the duplicate original of the Emily Mistric will of May 5, 1964 is now being held in his vault pursuant to court order, and the duplicate original was, in fact, introduced into evidence. A certified copy of the will is attached to the certificate. This certificate was filed in connection with the application for rehearing, the opposition thereto, and a motion to correct the statement in the opinion relative to the duplicate original will. On the basis of the Clerk's certificate, we will delete the statement made in our original opinion as footnote (1), although the footnote was correct on the basis of the records filed in this court.
Otherwise, the application for rehearing is denied.
NOTES
[1] It was stipulated that it subsequently disappeared while in the possession of Daniel J. McGee, counsel, and a xerox copy was introduced into evidence in lieu thereof.
[2] We make this factual finding on the basis of the testimony of Andrew Vidrine, a prominent attorney and former mayor of Church Point, who is essentially a disinterested witness.