BIENVENU, Judge.
John F. Brumfield, Jr. who will be referred to hereinafter as “plaintiff”, instituted proceedings to set aside a Judgment of Possession in the captioned succession rendered on January 27,1977, and an Amended Judgment of Possession rendered on November 10, 1977, and to have the trial court recognized and probate a will of the decedent or a copy thereof, dated May 20, 1972, under the terms of which plaintiff would be the sole legatee.
Named as defendants in the proceedings were Ruth Brumfield Duguay, in her own right as a petitioner in the petition for possession complained of, and as a legatee of Victoria Sarah Brumfield, also a petitioner in the said petition for possession but deceased at the time of the trial; and Helen Duguay Reeves, Dorothy Duguay Fields and Marion Duguay Kline, as sole heirs of Frank Duguay, Ruth’s deceased husband who was also a legatee of Victoria Sarah *1056 Brumfield. John L. Fields, Jr., Judith Ann Fields Burris and Donna Sue Fields Heath were substituted as parties defendant for Dorothy Duguay Fields, their mother who died on October 16, 1978, some two months after the suit was filed. All of said six present defendants, who will be referred to hereinafter as “defendants”, would be intestate heirs of Hugh J. Brumfield, the decedent, along with the plaintiff and his sister, who is not a party herein. The State of Louisiana was additionally named as a party defendant, but waived its presence at the trial and is not concerned with this appeal.
The trial court rendered judgment in favor of the plaintiff setting aside the Judgment of Possession, the Amended Judgment of Possession, the Inheritance Tax Return and the Original and Amended Detailed Descriptive List. Plaintiff does not appeal this portion of the judgment. The trial court further rendered judgment in favor of defendants and against plaintiff, rejecting plaintiff’s demand to probate a copy of the will of the decedent dated May 20, 1972, and dismissed plaintiff’s suit insofar as it seeks to probate a copy of said will. Plaintiff appeals from this portion of the judgment.
Hugh J. Brumfield, died on December 29, 1976. On May 20, 1972, decedent executed a valid statutory will before Emmett C. Sole, Notary Public. The original of this will was stored at the request and with the authority of the decedent, in the safety deposit box of the firm of Stock well, Sie-vert, Viccellio, Clements and Shaddock, a Lake Charles law firm. Only one original will was executed by the decedent. This original will remained in the law firm’s safety deposit box from May 20, 1972, until September 26, 1975, at which time at the request of the decedent, it was removed from the safety deposit box and delivered to the decedent by Mr. Sole in the presence of witnesses. The decedent received the original will and executed a receipt for it.
The decedent had no telephone at his residence and was an elderly gentleman who had difficulty getting around. The decedent often requested his niece, Helen Reeves, a defendant in these proceedings, to make telephone calls for him and perform other tasks. Sometime prior to September 26,1975, Mr. Sole received a telephone communication from Helen Reeves the substance of which is in dispute but not singularly important in deciding the merits of the case. After meeting with the decedent as a result of this communication, Mr. Sole drafted a proposed new will allegedly according to the wishes of the decedent. Since the decedent had no means of transportation to Mr. Sole’s office, at approximately noon on September 26, 1975, Mr. Sole went to the decedent’s house along with two witnesses, Susan Fruge and Elizabeth Chambers, for the purpose of executing the new will.
The proposed will was read to the decedent in the presence of the witnesses and the decedent refused to sign same. The decedent requested that Mr. Sole give him his original will of May 20, 1972 and Mr. Sole did so, receiving a receipt for same. Mr. Sole returned to his office with the proposed will unexecuted and received no additional contact from the decedent concerning the 1972 nor the proposed will.
The sworn statement of Elizabeth Chambers entered into evidence at the trial corroborates and verifies the testimony of Mr. Sole concerning the refusal of the decedent to sign the proposed will, and receipt of the original will by the decedent.
The deposition of Helen Reeves was offered into evidence by the defendants in lieu of her direct testimony and entered into evidence by the Court over the objection of plaintiff. Plaintiff called Mrs. Reeves on cross-examination under protest and she testified that she visited the decedent at his home on September 26, 1975, around 8:30 or 4:00 p.m. Upon entering the decedent’s room he handed her the original 1972 will and requested that she read the will out loud. Following the completion of the reading of the 1972 will, she handed it back to the decedent, and the decedent tore and destroyed his will with his own hands.
*1057 The Court found as fact that the decedent destroyed the original will dated May 20, 1972, in the presence of Helen Reeves in his home on the afternoon of September 26, 1975. The Court rendered Judgment rejecting plaintiff’s claim and dismissing plaintiff’s suit, insofar as it sought to probate the destroyed will. The trial court also invalidated the earlier succession proceedings, premised on decedent’s dying intestate, finding that plaintiff was not a party to those proceedings and at the time knew nothing about them, although he was named as being one of the petitioners for possession therein.
Plaintiff brings this appeal presenting the following issues for review.
(1) Did the trial court err by finding that the decedent intentionally revoked his will dated May 20, 1972, by destruction of said will on September 26, 1975?
(2) Did the trial court err by admitting into evidence the deposition of Helen Reeves, over the objection of plaintiff’s counsel while the defendant Helen Reeves was present in Court, sitting with her attorney and no basis having been shown for the admissa-bility of the deposition pursuant to LSA-C.C.P. Art. 1450?
(3) Did the trial court err in failing to meet its duty and responsibility to observe the credibility of a party (Helen Reeves) on direct examination, particularly when the credibility of that witness was crucial to the outcome of the case, she being the only witness to the alleged destruction of the will in question?
(4) Did the trial court err in admitting the deposition of Helen Reeves as direct testimony in the defendant’s case in chief, the deposition not being the best evidence of the alleged destruction of Hugh Brumfield’s will and is not admissible absent a predicate of unavailability under the rules of evidence?
The first issue to be addressed is whether or not the May 20, 1972, testament was revoked by the testator on September 26, 1975, when the decedent allegedly tore and destroyed his will with his own hands in the presence of Helen Reeves. The Civil Code under articles 1691, et seq., provides two methods of revoking testaments. The first method is a revocation by written instrument clothed with the formalities of a last will and testament; and the second by a donation inter vivos, or by a sale, in whole or in part, of the thing bequeathed. Succession of Hill, 47 La.Ann. 329, 16 So. 819 (1895). The courts have recognized one additional method for revocation of testaments, that is the destruction of the will by the testator himself, with the courts reasoning that the actual defacement, obliteration and destruction of the will leaves no will in existence. Rivette v. Moreau, 341 So.2d 459 (La.App. 3rd Cir. 1976); Smith v. Shaw, 221 La. 896, 60 So.2d 865 (1952); Succession of Hill, supra. In Smith the Supreme Court held that a will was destroyed by mutilation when the document was torn into pieces and discarded by the decedent’s attorney at the decedent’s request; but there are certainly other ways to destroy a will, "uch as by the burning of the will by the testator. However, merely placing the testament among waste paper when the testator had it in his power to destroy the testament but did not do so, does not result in a revocation despite the fact that the testator desired that it be revoked. Succession of Hill, supra. It is this latter method of revocation that we are concerned with in the instant matter, and if the decedent’s will was in fact torn up as testified to by Helen Reeves, then that was a sufficient destruction to constitute revocation under the jurisprudence.
The jurisprudence provides a legal presumption that in the event a testament cannot be located after the decease of the testator that it was revoked by the testator. Succession of Nunley, 224 La. 251, 69 So.2d 33 (1953). The Court in Nunley stated:
“The fact that an olographic will, shown to have been in the possession of or accessible to the deceased, cannot be found at this death, gives rise to a legal presump *1058 tion of revocation by destruction; however, this presumption is a rebuttable one, according to accepted principles adhered to not only in this State and in Prance, but under the common law as well. See Fuentes v. Gaines, 25 La.Ann. 85; cf. Succession of O’Brien, 168 La. 303, 121 So. 874; Ripert et boulanger’s Traite’ elementaire de droit civil de Planioi, op. cit. supra, III, nos 2087, 2088, p. 665; annotation in 34 A.L.R. at page 1304 et seq.; 3 A.L.R.2d 949, at page 952 et seq. The onus of rebutting this presumption is cast upon those seeking to establish the will, by clear proof (1) that the testator made a valid will, (2) proof of the contents or substance of the will, and (3) of the fact that the will, though it could not be found at the testator’s death after diligent search, was never revoked by him.”
The presumption provided for by Nunley is a weak one, (Jones v. Mason, 234 La. 116, 99 So.2d 46 (1953), but nonetheless the burden is upon the proponent of the missing testament to prove that it was not in fact revoked by the testator prior to his decease. If he is successful, then he is entitled to proceed to probate of the missing will.
In the case presently before this court the original of the will executed by the deceased on May 20, 1972, was not found, and as a result thereof, plaintiff attempted at the trial level to probate a copy of said will by rebutting the presumption of revocation. There is no question as to plaintiff meeting the first two requirements of the Nunley case: proof that the testator made a valid will and the contents thereof, as he was able to place photocopy of the May 20, 1972 will into evidence. The third requirement is at the heart of this appeal; that is, proof that the decedent testator never revoked his testament. The evidence adduced at trial as to the revocation of the testament by the deceased consists principally of the testimony of Helen Reeves both in her deposition entered into evidence by the defendants and her testimony on cross-examination by plaintiff’s attorney. Helen Reeves testified that she observed the testator, after she read the will to him, take the will in his own hands and tear it up into pieces and place it on the dresser next to his bed. Plaintiff presented circumstantial evidence (the only kind he could) to the effect that the decedent did not revoke the will, there was also circumstantial evidence to the contrary, but the only direct evidence of revocation was Mrs. Reeves’ testimony.
The trial court found that the plaintiff failed in his burden of overcoming the presumption that the will was not revoked, and absent a finding of manifest error on the part of the trial court, his decision will not be overturned on review. Regions v. Regions, 381 So.2d 920 (La.App. 3rd Cir. 1980).
The decision of the trial court in large part rested on the testimony of Helen Reeves. Her testimony consisted of cross-examination by the plaintiff, under protest, and a copy of her deposition, entered into evidence at the trial in lieu of her direct testimony and over the strenuous objection of plaintiff based on the fact that she was present in court, sitting with her attorney and able to testify. Counsel further argued that the deposition was taken at his instance for discovery purposes, and that he was the only attorney who asked questions of the deponent; yet the defendants’ attorneys, some of whom were not even present at the taking of the deposition, wished to admit it into evidence as their entire case in chief. In our view, the testimony of Mrs. Reeves vitally affects the outcome of this litigation. If we consider her testimony in evaluating the evidence, we see a reasonable basis for the trial judge’s finding that the testament was destroyed, deferring to his role with regard to the facts. If we conclude, on the other hand, that her testimony was improperly admitted and should not be considered as evidence, then we cannot see any reasonable basis for a finding that the testament was destroyed, and we then must hold that the trial judge was clearly wrong in so finding. A review of the trial judge’s decision on the question of admissability of Mrs. Reeves’ deposition and consequent forcing of plaintiff’s counsel to call her on cross-examination, becomes critical.
*1059 The Code of Civil Procedure in article 1450 provides three situations in which depositions may be used in evidence:
“(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
“(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Article 1442 or 1448 to testify on behalf of a public or private corporation, partnership, or association, or governmental agency which is a party may be used by an adverse party for any purpose.
“(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.”
A need must be shown pursuant to the Code of Civil Procedure in order for the deposition to be properly admitted into evidence, and a basis for admitting the deposition into evidence pursuant to the article must be shown. Bankston v. Cooper, 371 So.2d 654 (La.App. 4th Cir. 1979).
LSA-C.C.P. art. 1450(1) is inapplicable because the deposition was not introduced to impeach trial testimony. Neither is the deposition properly entered into evidence under Subsection (2) because it was not sought to be introduced by an adverse party. None of the circumstances described in Subsection (3) (a) through (e) were shown to exist so as to make that portion of the article applicable. Accordingly, it was error for the trial court to allow Mrs. Reeves’ deposition into evidence.
Even though the trial court committed error in receiving the deposition into evidence, we find that the error was inconsequential and did not affect the outcome below. Mrs. Reeves testified at the trial on cross-examination by plaintiff’s attorney and the court was able to observe her demeanor and answers as she testified, and thus judge her credibility; he even commented accordingly in his reasons for judgment. Her testimony in court was consistent with her testimony in the deposition, was clear, plausible and convincing. In reading the colloquy in the transcript surrounding the introduction of the deposition, we at first suspected a fear on the part of defendants’ counsel to have Mrs. Reeves testify in open court, such as her being too ill or infirm or worried or frightened; but upon reading her deposition and testimony on cross-examination it soon became apparent that the only motive for offering the deposition was simply that stated by counsel: an interest in saving time at the conclusion of the court day. There is no doubt in our minds that had the trial judge correctly sustained plaintiff’s objection, that defendants would simply have called her on direct examination and the result would have been the same. Hence, the error did not affect the merits. Naquin v. Maryland Casualty Company, et al, 311 So.2d 48 (La. App. 4th Cir. 1975).
A careful review of the record gives us no reason to quarrel with the trial judge’s conclusion that Mrs. Reeves was truthful. She did not have a great deal to gain by a judgment that the decedent died intestate. Apparently her vision of the value of decedent’s estate is considerably less than plaintiff’s. It was through her efforts, whichever way it happened, that her sisters were included in the proposed new will, rather then she alone; which indicates unselfishness. She did not even choose to be present *1060 when the proposed new will was brought to the decedent for execution, so that she might exert influence in inducing him to execute it; which does not indicate that she was so interested in what he did with his estate. Why decedent chose not to execute the proposed new will probably never will be known, but it is understandable why he would want to revoke his will and consider another one. After all, it is a fact that plaintiff rarely saw decedent in the last years of his life, and had not seen him for IV2 to 2 years prior to his death. Mrs. Reeves, on the other hand, saw him frequently in his last years, cared for him, tended to his needs. She gives the impression of being very unselfish; being content to have a friend of decedent’s handle his cash money by placing it in a savings account for him, rather than attempt to gain control of it herself. The evidence is to the effect that Mrs. Reeves did not concern herself with the succession and its effects after the death of decedent, nor covet any of it. She had only two items in her possession after his death, and the evidence is that those in charge had them delivered to her home. There is no evidence to the contrary. There is other evidence lending support to a finding that Mrs. Reeves is credible; the foregoing is simply to illustrate a reasonable basis for the trial judge’s conclusions.
We are not sayihg that reasonable minds could not come to opposite conclusions on the question of revocation of the testament; we simply say that the lower court’s conclusion was not unreasonable and was supported by the evidence. Hence, there is no reversible error.
For the reasons assigned, the judgment of the trial court is affirmed at plaintiff’s cost.
AFFIRMED.
STOKER, J., concurs and assigns reasons.
CUTRER, J., concurs for reasons assigned by STOKER, J.