CHIASSON, Judge.
This is an appeal from a judgment holding that decedent, Robert Mirkil Talbot, had revoked his will dated November 5, 1981, prior to his death.
At the time that Talbot executed his last will and testament, on November 5, 1981, he was married to his first wife, Miriam G. Talbot. Dorsey C. Martin, III, a Baton Rouge attorney, prepared this will in duplicate originals, both of which were executed by Talbot, the witnesses and the notary. One duplicate original was given to Talbot and the other original was left with Martin. Under that will, Talbot left all of his property to his then wife, Miriam, and in the event that she should predecease him, he left all of his property to his friend J. Barker Killgore. Miriam G. Talbot died in April, 1983.
On November 3,1984, Talbot married his second wife, Lois M. Talbot. At the time of this marriage, Talbot owned a condominium on Wooddale Boulevard and Mrs. Talbot owned a townhouse on Shadowbrook Drive. Both of these residences were completely paid for. Talbot and his second wife lived in her townhouse until June 26, 1985, when they purchased a home on East Sheraton Drive. In order to be able to pay the mortgage on the East Sheraton residence, the Talbots decided to sell the condominium owned by Mr. Talbot and the townhouse owned by Mrs. Talbot. Because both of the Talbots had only modest incomes and the mortgage payment on the East Sheraton home was more than either of them could afford by themselves, they decided that they needed to make financial arrangements to provide for each other in case something should happen to either of them before they could sell their former residences and pay the mortgage on the East Sheraton residence.
After consulting an inheritance chart that Mrs. Talbot had obtained from a course at LSU, the Talbots determined that because Talbot had no children, sisters or brothers and both his parents were dead, that Lois Talbot would inherit his property if he died intestate. They determined that it was necessary for Mrs. Talbot to execute a will in order to provide for Talbot because she had children from a previous marriage.
Mr. Talbot contacted Dorsey Martin, an attorney, in the latter part of June, 1985, and made a will consultation appointment for July 1, 1985.
Both Mr. and Mrs. Talbot met with Martin on July 1, 1985, to discuss wills.
At the July 1st meeting, Talbot unequivocally stated to Martin that he wanted his present wife to inherit all of his property. Likewise, Mrs. Talbot, who had children from a previous marriage, advised Martin that she wanted to provide for her husband. Talbot then asked Martin if he needed a will because it was his understanding that Mrs. Talbot would inherit all of his property under Louisiana law if he had no will. Martin assured Talbot that under Louisiana law the present Mrs. Talbot would inherit his estate if he died intestate. Talbot was also advised by Martin that it would cost $75.00 to prepare a will. Talbot elected not to have a will prepared because, he stated, the law would accomplish what he wanted without a will and he could save $75.00.
Martin prepared a will for Mrs. Talbot which left Talbot (1) $20,000.00 cash, and *433 (2) the usufruct over her interest in the recently purchased community home located at East Sheraton Drive. In addition, the will provided that her townhouse located at Shadowbrook Drive was to be sold as soon as practical after her death and that the total net proceeds from that sale were to be applied to the payment of the community debt on the home located at East Sheraton. She also designated Talbot to serve as her executor.
Some time after July 1,1985, and prior to the next appointment with the Talbots, Martin directed his secretary to pull the will which Talbot had executed on November 5, 1981. When Martin reviewed the will, he learned that although Miriam Talbot (now deceased) was the primary beneficiary, the will had a contingent beneficiary, namely J. Barker Killgore. Martin had not remembered that there was a contingent beneficiary in Talbot’s will when he had met with the Talbots on July 1, 1985.
On Friday, July 12,1985, at approximately 10:00 or 10:30 a.m., the Talbots met with Martin in order for Mrs. Talbot to execute the will which Martin had prepared as a result of the July 1, 1985 meeting. While Mrs. Talbot was talking with Martin’s secretary, Martin confidentially discussed the November 5, 1981 will with Talbot in such a manner that Mrs. Talbot would not be able to hear the conversation. Martin showed Talbot one of the duplicate originals of the November 5, 1981 will, calling to his attention that the will provided for a contingent beneficiary, i.e., J. Barker Kill-gore. Talbot expressed appreciation to Martin for calling this matter to his attention and acted surprised, like he had forgotten about the will. Talbot (outside of the hearing of Mrs. Talbot) reaffirmed to Martin that he wanted his entire estate to go to his present wife, and then he took the will from Martin and tore it up. Martin reminded Talbot about the other duplicate original will, and Talbot indicated that he would take care of it. Martin did not discuss with Talbot what the consequences would be of not destroying the remaining duplicate original will. This entire conversation between Martin and Talbot was conducted so that Mrs. Talbot would not overhear the discussion.
On July 12, 1985, Mrs. Talbot executed the will which Martin had prepared for her, which will made substantial provisions for the financial security of Mr. Talbot. The Talbots then left Martin’s office around 11:00 or 11:30 a.m., and went to a truckload sale at the Best Western on Airline Highway. Around noon, the Talbots left the Best Western and went to the Mirror Steak House for lunch. After eating lunch, the Talbots went to K-Mart around 1:30 p.m. to purchase some hoses and sprinklers for their East Sheraton home. The Talbots left K-Mart and went to their home on East Sheraton at about 2:30 p.m. to bring the hoses and sprinklers and to unload some hoses which were in their car. By that time, Mr. Talbot was not feeling well and he sat down at the table and took some medication for what he thought was indigestion. The Talbots stayed at the East Sheraton home until approximately 4:30 or 5:00 p.m., until Mr. Talbot was feeling better. The Talbots then drove back to the Shadowbrook townhouse. Around 9:00 that evening, Talbot became very short of breath and was taken to the Medical Center where he died at 10:25 that evening.
Mrs. Talbot has no recollection of ever going by Talbot’s condominium at any time on July 12,1985. She does, however, recall that they had been to the condominium earlier in the week to move some things to the East Sheraton residence. Nellie Pres-tridge and Annette Morris, both of whom lived in the same condominium complex as Mr. Talbot, testified that they saw Mr. and Mrs. Talbot carrying boxes out of the condominium on the afternoon of Friday, July 12, 1985.
On Saturday, July 13, 1985, after Mr. Talbot’s death, Killgore and Mrs. Talbot went to Talbot’s condominium to look for information which the funeral home had requested. While at the condominium, Kill-gore testified that he looked in the safe for Talbot’s will, but did not find it. The next morning, Sunday, Killgore secretly and without Mrs. Talbot’s knowledge or consent, went back to the condominium and *434 thoroughly searched for the will, but once again could not find it. Approximately a week to ten days later, Killgore secretly went back to Talbot’s condominium, again without advising Mrs. Talbot, to search for Talbot’s will for the third time. On the third occasion, Killgore states that he found the will in the safe and removed the will and stocks and bonds located in the safe.
In his oral reasons for judgment, the trial judge ruled that Talbot’s November 5, 1981 will met all of the formal requirements for the confection of a statutory will. He then made the following factual finding regarding Talbot’s intent: “The court is convinced, beyond a shadow of a doubt, even though such a finding is not necessary insofar as a burden is concerned in this case, that Mr. Talbot desired that his earthly possessions would be inherited by his widow, Lois Talbot.” It was further held that the destruction of the will in front of Martin constituted a clear expression of intent by Talbot to revoke his will and that Talbot revoked his November 5, 1981 will by destruction. Accordingly the trial judge refused to probate the will and dismissed the appellant's petition.
ASSIGNMENTS OF ERROR
Appellant, J. Barker Killgore, contends that the trial court erred in:
1) failing to apply the proper legal standard for the burden of proving the lawful revocation of a will;
2) holding that the destruction of one of two duplicate original wills constitutes a revocation of the will as a matter of law;
3) failing to give proper weight to the last acts of the deceased on the date of his death which were totally inconsistent with revocation; and
4) failing to consider the strong public policy of the State of Louisiana which favors the upholding of the validity of wills.
DISCUSSION
The authenticity of the 1981 will and its compliance with legal formalities is undisputed. Hence appellant, as proponent of the testament, has met his burden of proof under La.C.C.P. art. 2903 and the burden shifts to the appellee, as opponent, to prove that there is some good reason why the will should not be admitted to probate — such as its lawful revocation by the testator. It is well settled that there is a strong presumption of validity of testaments and the validity of a will is to be upheld wherever possible. Succession of Norton, 451 So.2d 1203 (La.App. 5th Cir. 1984). The opponent to the probate of a testament is required to prove its invalidity beyond a reasonable doubt to be able to overcome the very strong presumption of its validity and proof of revocation must be strong and almost inevitable. Jones v. Mason, 234 La. 116, 99 So.2d 46 (1958).
Thus, since there is no question that decedent’s 1981 will presented for probate is authentic and complies with the formal requisites of law, there arises a very strong presumption in favor of the validity of the will. Appellee/opponent must prove revocation beyond a reasonable doubt to overcome the presumption that the will is valid and entitled to be admitted to probate.
La.C.C. art. 1691 provides as follows:
The revocation of testaments by the act of the testator is express or tacit, general or particular.
It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.
It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
It is general when all the dispositions of a testament are revoked.
It is particular when it falls on some of the dispositions only, without touching the rest.
However, in all cases, a legacy or disposition shall be deemed revoked in the event that the legatee has unlawfully taken the life of the testator, and said legacy or disposition shall be deemed not written.
*435 La.C.C. art. 1692 states that “(t)he act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities.”
Although the above codal authority does not specify that destruction of a will by a testator constitutes a testamentary revocation, our jurisprudence recognizes that such action is an effective means of revoking a will. Mere intent to revoke a will does not per se effect revocation. Such intent must be implemented either by a method of revocation authorized by art. 1691, above, or intentional destruction of the instrument. Otherwise the testator’s intent to adhere to the will is presumed. Succession of Boyenga, 424 So.2d 414 (La.App. 2d Cir.1982), affirmed 437 So.2d 260 (La.1983); In re Succession of Jones, 356 So.2d 80 (La.App. 1st Cir.1978), writ denied 357 So.2d 1168 (La.1978).
There is no question that the decedent did not revoke his will in accordance with La.C.C. art. 1692. The olographic revocation of a statutory will executed by testator on the face of the will sought to be revoked in the form prescribed by La.C.C. art. 1692 has been held to also revoke the remaining multiple originals of the will. Succession of Beard, 483 So.2d 1228 (La.App. 4th Cir. 1986), writ denied 488 So.2d 1021 (La.1986).
The contention that the will was revoked relies on revocation by destruction. Duplicate originals of the November 5, 1981 will were executed by Talbot and the witnesses. Since both wills were witnessed and signed they were of equal dignity and force. Jones v. Mason, supra; Rivette v. Moreau, 341 So.2d 459 (La.App. 3d Cir. 1976). To accomplish revocation by destruction, the destruction must be so complete as to render it impossible to offer a whole will in court for probate. Rivette v. Moreau, supra; 1 La.L.R. 467-468.
Once the will is shown to be authentic and in compliance with the requisites of law, the public policy of this State is clear that the intention of the testator as expressed in the will must govern. Succession of Roussel, 373 So.2d 155 (La.1979). Talbot did not destroy the duplicate original of his will, as he was instructed to by his attorney. Therefore the law, jurisprudence, and public policy of this state mandate a finding that the 1981 will is valid and was not revoked. Decedent’s testamentary intent, as expressed in the duplicate original of his will, must be given effect.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed. It is hereby ordered, adjudged and decreed that the will of Robert Mirkil Talbot dated November 5, 1981, be recognized as his last will and testament. The matter is remanded for further proceedings according to law.
All costs of this appeal are assessed against appellee.
REVERSED AND REMANDED.